Argued November 22, reversed and remanded for new trial
December 16, 1974

STATE OF OREGON, *Respondent, v* VERNON
ROBERT GRIFFIN (No. 73-4836), *Appellant.*
529 P2d 399

*John M. Biggs,* Eugene, argued the cause for appellant. With him on the brief were Allen & Biggs, Eugene.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

Defendant was charged with murder. ORS 163.115. He pleaded not guilty, claiming self-defense, but was convicted by a unanimous jury verdict and was sentenced to life imprisonment. Defendant appeals, presenting seven assignments of error. We shall consider the assignments in the sequence presented by defendant, except the fourth assignment shall be considered last.

On November 12, 1973, defendant and Carol Lyman (the estranged wife of the deceased, Gary Lyman) were living together in Springfield, Oregon. Three days earlier Lyman had arrived in the Eugene

area after being released from a California penitentiary. On the evening of November 12, Lyman entered the place of residence of Carol Lyman and defendant. A fight ensued. At some point defendant went to a neighbor's home, procured a rifle, and returned to his residence. Lyman had left the residence but returned shortly thereafter. Defendant then stepped out on the porch with the rifle and shot Lyman as he approached defendant.

■ Defendant first assigns as error the trial court's holding that evidence of defendant's prior convictions for nonsupport, possession of a concealable firearm by an exconvict, burglary not in a dwelling, and larceny from a person could be submitted to the jury. Defendant took the witness stand. As the defendant acknowledges in his brief, his contention has been decided adversely to defendant's position in *State v. Rush,* 248 Or 568, 436 P2d 266 (1968), and *State v. Smith,* 12 Or App 112, 504 P2d 1072, Sup Ct *review denied* (1973).

■ Defendant next assigns as error the trial court's refusal to excuse a juror as incompetent on defendant's challenge for cause during voir dire. As a result, the defendant exercised one of his peremptory challenges to remove the juror in question. Since defendant makes no claim that he was ultimately forced to accept an objectionable juror because of his use of a peremptory challenge to remove the juror in question, there is no error for review. *State v. Rathie et al.,* 101 Or 339, 199 P 169, 200 P 790 (1921).

■ Defendant's third assignment of error relates to certain remarks made by the prosecutor during the trial. Defendant contends that said remarks, when

considered as a whole, prejudiced the defendant in the eyes of the jury and made a fair trial impossible. We are satisfied from our review of the record that admonishments and comments from the bench were sufficient to cure any potentially prejudicial remarks and would not be cause for reversal if that were the only error found in the record. We disapprove of the conduct of the prosecutor. Our ruling merely reflects the fact that the trial judge was reasonably successful in maintaining a balance during the proceedings.

■■ Under his fifth assignment of error, defendant contends that a seven-year-old boy called as a witness by the state was incompetent and that the trial court therefore erred in allowing the child to testify. Defendant contends that portions of the record pertaining to an examination of the witness prior to the presentation of his testimony, when considered as a whole, showed the witness did not meet the standards of competency as set forth in ORS 44.030, which require that the court ascertain to its satisfaction "* * * whether the child has sufficient intelligence and sense of obligation to tell the truth to be safely admitted to testify." As that statute has been interpreted, determining a child's competency to testify is within the discretion of the trial court, and its decision ordinarily will not be disturbed. *State v. Herrera,* 236 Or 1, 386 P2d 448 (1963); *State v. Stich,* 5 Or App 511, 484 P2d 861, Sup Ct *review denied* (1971). After reviewing the examination of the witness by the trial judge, we are satisfied that the trial judge did not abuse his discretion.

■ In his sixth assignment of error defendant contends that the trial court erred in giving its instruction concerning the limitations on the use of deadly physical force instead of the instruction offered by defend-

ant. We have reviewed defendant's requested instruction and compared it to the instruction actually given by the court, and we are satisfied that the court's instruction adequately instructed the jury on this subject.

■ In his seventh assignment of error, defendant contends that the trial court erred in giving its instruction concerning circumstantial evidence instead of that offered by defendant. In essence, defendant argues that an essential element of the state's case—defendant's state of mind at the time of the shooting—was based solely upon circumstantial evidence. Based upon this claim, defendant contends that the *Dennis* "inconsistent with any reasonable theory of innocence" instruction regarding circumstantial evidence (*State v. Dennis,* 177 Or 73, 77, 159 P2d 838, 161 P2d 670 (1945)) should have been given. This contention has been rejected in similar situations, and we reject it here. *See State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974); *State v. Coleman,* 18 Or App 600, 526 P2d 453, Sup Ct *review denied* (1974); *State v. Draves,* 18 Or App 248, 524 P2d 1225, Sup Ct *review denied* (1974).

■ Defendant's fourth assignment of error concerns the refusal of the trial court to allow a witness to testify as to the effect of alcohol upon the deceased. In dealing with this assignment it is first necessary to outline the trial situation at the time. As noted above, defendant claimed that he shot Lyman in self-defense. Evidence presented during the trial tended to show that during the three days preceding the shooting Lyman at various times consumed amounts of liquor or marihuana. Defendant presented testimony that Lyman had forcibly entered defendant's residence the night of the shooting; that Lyman appeared to be in-

toxicated at the time; that Lyman was the aggressor in that he physically attacked both defendant and Carol Lyman; that before leaving Lyman threatened to return and kill both defendant and Carol Lyman; and that when Lyman returned defendant implored Lyman to leave the area. Defendant claimed he fired only after Lyman had reaffirmed his former threat to kill him and Carol Lyman and had reached into his car; defendant claimed he thought Lyman was reaching for a weapon.

Additionally, defendant presented evidence that he and Carol Lyman had been injured in the original fight; that they feared Lyman's alleged propensity for violence; and that defendant had knowledge of prior handling of guns by the deceased.

A pathologist who performed the autopsy on Lyman's body testified that the percentage of blood alcohol in his body at the time he died was .12 percent, and that, "A person with .12 alcohol is under the influence period. * * *" Other evidence presented verified that Lyman had been drinking prior to the time that he went to the residence of defendant.

Earlier in the trial, the state had presented the following testimony of Nicholas Lyman, a brother of the deceased:

"* * * * *

"Q How does Gary get when he has something to drink? Is he the kind that gets low when he drinks or high or describe how he gets?

"A He really didn't change that much when he drank liquor or smoked grass. He got very loose and very free-wheeled. He was just very happy, you know. Really there wasn't that much change when he would drink because he was so happy when he got home, you know.

"* * * * *

"Q Have you ever seen Gary get violent or angry?

"A Yes.

"Q Have you seen him do just that because he got drunk?

"A No.

"* * * * * ."

It is in this context that we consider defendant's offer of testimony by a Mr. Larry Miller as to the effect of alcohol upon the deceased. The offer of proof developed at trial as follows:

"* * * * *

"Q [By Mr. Biggs] Are you acquainted or were you acquainted with Gary Ray Lyman?

"A Yes, I was.

"Q Were you familiar with his reputation in this area as to whether or not he was a violent person?

"A Yeah, Gary Lyman had a couple fights.

"Q Were you familiar with his general reputation in the community about whether or not he was a violent person?

"A Yeah, he was known as a flip out.

"Q What does that mean, flip out?

"A He'd be okay one minute and flip out the next.

"Q What does one do when they flip out?

"A Start swinging at you.

"Q What about the effect of alcohol on Mr. Lyman? Do you have any knowledge of that?

"A Yeah. I used to bounce at the Kon Tiki when it was still open, and Gary used to come in and get drunk.

"MR. KILMER: I object. This is only going

to be the recital of another specific act and that's irrelevant and improper.

"MR. BIGGS: Except for the fact there's testimony from Doctor McMilan in this case as to the amount of blood alcohol, and apparently there's an issue as to who was the aggressor.

"* * * * *

"THE COURT: I'll sustain the objection.

"MR. BIGGS: Your Honor, I want to make an offer of proof on that issue, but I can do it at a more convenient time if that's agreeable with the Court.

"THE COURT: That's fine.

"* * * * *

"THE COURT: Now, you have an offer of proof?

"MR. BIGGS: Yes, Your Honor. As we indicated, it will be very brief.

"* * * * *

[Whereupon the following proceedings were held outside the presence and hearing of the jury:]

"MR. BIGGS: Your Honor, apparently they took Mr. Miller back to the jail.

"THE COURT: Can you make a representation as to what he would say?

"MR. BIGGS: I would like to be understood that I have not interviewed him myself, but the interview that Mr. Tiktin had, he indicated that when Mr. Lyman would be drinking, he'd be laughing one minute and subject to flipping out the next. In other words, he'd be drinking and laughing and all of a sudden he'd be flipping out, as it was explained. Fighting, I guess. That's what I thought the answer to the question would be.

"THE COURT: Now, is it your understanding this would be based on a number of observations over a period of time? That is, on a number of occasions?

"MR. BIGGS: My understanding was, yes, that he would have said that based on a number of occasions.

"THE COURT: And you object to that, Mr. Kilmer?

"MR. KILMER: Yes.

"* * * * *

"THE COURT: Well, it seems to me that evidence would not be admissible of the reaction of an individual to alcohol on a particular occasion, or on a particular series of occasions. Now, I don't know where you might reach the kind of testimony that would be admissible to show a person's habitual reaction. * * *

"* * * I don't know where it is, but I believe that such evidence is not admissible and I adhere to my ruling.

"MR. KILLMER: Thank you, Your Honor.

"MR. BIGGS: Now, am I given to understand that we're going to accept the statement of counsel as to the offer of proof rather than bringing Mr. Miller back?

"MR. KILMER: No, I'll not stipulate if Mr. Miller were brought back he'd say these things.

"THE COURT: Then he'll have to be brought back.

"MR. KILMER: Just a moment. Is Your Honor saying if this statement that was read to you were in fact testified to by Mr. Miller that you would still rule against the offer?

"THE COURT: Yes.

"MR. KILMER: Well, then I'll stipulate that's what he would say.

"MR. BIGGS: That's satisfactory with the defendant.

"THE COURT: All right. Now, the only thing I don't know is how many times he saw him and

over what period of time. If you're satisfied with your record—

"MR. BIGGS: (Interrupting) Yes, I am, Your Honor.

"THE COURT: All right.

"* * * * *."

We think the testimony excluded was relevant and admissible as tending to show that Lyman's character included a propensity for violence when intoxicated. The state had earlier introduced testimony to the effect that Lyman "got very loose and very free-wheeled" and "was just very happy" when intoxicated.

Our research indicates no Oregon decision regarding the specific question of the admissibility of evidence showing the effect of alcohol upon the deceased when a claim of self-defense has been made. However, the position taken in other jurisdictions can be summarized as follows:

"* * * * *

"Evidence of the violent and quarrelsome character of the victim under certain circumstances is usually admissible where these circumstances are shown to have existed at the time of the encounter. Thus, where the evidence tends to show that the victim of homicide was intoxicated at the time of the killing, evidence of his character or reputation for turbulence when intoxicated is admissible on the issue of self-defense.* * * " (Footnotes omitted.) 40 Am Jur2d, Homicide § 307 (1968).

■ The Oregon Supreme Court has noted that a claim that a defendant acted in self-defense "would be more readily believed concerning a violent and dangerous man than a peaceable and quiet one, and any mind searching for the truth and in doubt would naturally be affected by such evidence.* * *" *State v. Thompson,*

49 Or 46, 49, 88 P 583, 124 Am St R 1015 (1907). Although the attempted showing in this case was narrower than that in *Thompson,* our reasoning is similar: A defendant claiming self-defense ought to be able to present evidence of the violent character of deceased when intoxicated when there is evidence supporting such a position.

The state contends that the offer of proof made by defendant was not sufficient. It is true that the refusal to allow certain testimony cannot be reviewed on appeal where no offer of proof is made. *State v. Jenkins,* 246 Or 280, 424 P2d 894 (1967). Similarly, an inadequate offer of proof may well present an insufficient record on appeal. However, the reasoning of the requirement of the offer of proof is that without such an offer an appellate court cannot say that the challenged ruling affected adversely the substantial rights of the appellant, and generally cannot determine whether the ruling was, in fact, erroneous. *O'Brien v. Dunigan,* 187 Or 227, 210 P2d 567 (1949). With this reasoning in mind, and with the record before us, we find that the offer of proof was sufficient. As stipulated by counsel, the testimony would have indicated that Lyman was susceptible to drastic swings of mood when drinking, and that such swings of mood included violent behavior. It futher appears that the observation of the witness would have been based on a number of occasions over a period of time.

Coupled with the over-all circumstances of this case, the error in refusing to allow Mr. Miller's testimony we find to have been prejudicial to defendant. A principal issue in this case was defendant's state of mind when he shot Lyman. A great deal of defendant's claim of self-defense was predicated upon his asser-

tion that he believed Lyman had a gun and fully intended to kill defendant and Carol Lyman. The jury well may have been more inclined to believe defendant's version of the events preceding the shooting, including his claim that Lyman initiated an unprovoked attack, had it been presented with testimony regarding Lyman's unpredictable swings of mood and potentially violent behavior while intoxicated.

We cannot hold that the error in failing to allow Mr. Miller's testimony was harmless. The conviction is reversed and the case is remanded for a new trial.