Argued and submitted June 19, reversed and remanded for a new trial on
Count 1; otherwise affirmed August 28, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBERT ANTHONY BEISSER,
*Defendant-Appellant.*

Lane County Circuit Court
211105237; A148833

308 P3d 1121

Lindsey Burrows, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erin C. Lagesen, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

In this criminal case, defendant was charged with two counts of assault in the fourth degree, ORS 163.160.[1] Count 1 alleged that defendant assaulted his roommate, Saner. Count 2 alleged that defendant assaulted his neighbor, Allen. During trial, defendant sought to present evidence that he was not guilty of Count 1 because he hit Saner in self-defense. The trial court excluded some of that evidence. Also during trial, the police officer who investigated the charged assaults testified that defendant had refused to meet with her. In response to the officer's testimony, defendant moved for a mistrial on both counts, asserting that the testimony constituted an impermissible comment on his invocation of his right to remain silent. The trial court denied the motion. A jury found defendant guilty of both counts.

Defendant appeals the resulting judgment of conviction, raising four assignments of error. Defendant's first three assignments of error relate to the trial court's exclusion of evidence he sought to present to support his claim that he was not guilty of Count 1 because he hit Saner in self-defense. We conclude that the trial court erred in excluding the evidence that is the subject of defendant's first assignment of error, and we further conclude that the error was not harmless; accordingly, we reverse and remand for a new trial on Count 1. Because the record may develop differently on remand, we do not reach defendant's second and third assignments of error, which also relate to Count 1. Defendant's fourth assignment of error relates to the trial court's denial of his motion for a mistrial on both counts. We conclude that, even if the police officer's challenged testimony constituted a comment on defendant's invocation of his right to remain silent, the trial court did not abuse its discretion in denying defendant's motion for a mistrial; accordingly, we affirm on Count 2.

Given the nature of defendant's assignments of error, we begin by describing the evidence that defendant sought to present regarding his self-defense claim and the

---

[1] As relevant here, ORS 163.160 provides, "A person commits the crime of assault in the fourth degree if the person *** [i]ntentionally, knowingly or recklessly causes physical injury to another[.]"

trial court's rulings on the admissibility of that evidence. We then describe the evidence relevant to the issues on appeal that the parties presented at trial.

Defendant sought to present evidence that, in the days before the March 9 incident that led to the charges in this case, Saner had been increasingly aggressive toward him. Specifically, defendant sought to present evidence about incidents on March 4 and March 7. Defendant wanted to testify about both incidents, and he also wanted to present the testimony of another roommate, Parks, who had witnessed both incidents.

Regarding the March 4 incident, defendant sought to present evidence that Saner had been verbally aggressive toward him during a dispute about a television. The trial court ruled that neither defendant nor Parks could testify about the incident at trial. In an offer of proof, defendant testified that he had brought a television home on March 4 and that he had been watching it with Parks and another roommate when Saner came home. Defendant testified that Saner did not say anything about the television at first, but later that night, after drinking alcohol, Saner "got right in [his] face" and was "ranting and raving" about the television. Also in an offer of proof, Parks testified that Saner, who was "drunk as a skunk," told defendant that he should have told him about the television before bringing it into their shared apartment and "got in [defendant's] face * * * just yelling and screaming and calling him names."

The trial court excluded both defendant's and Park's testimony about the March 4 television incident on the ground that the incident was not a "violent interaction between the parties." The court explained that defendant had presented only evidence of "yelling and screaming," which, in the court's view, was insufficient to establish that the incident was relevant to defendant's self-defense claim.

Regarding the March 7 incident, defendant sought to present evidence that Saner came into the bathroom when defendant was taking a bath, yelled at him, and pushed him down when he tried to get out of the bathtub. The trial court allowed defendant to testify about the incident at trial, and defendant testified that Saner barged into the bathroom,

yelled at him, and pushed him down three times when he tried to get out of the tub. Defendant also testified that his toe was broken during the incident.

After defendant testified about the March 7 bathroom incident, the trial court ruled that Parks could not testify about the incident at trial. In an offer of proof, Parks testified that, in response to yelling, he went into the bathroom, where he saw defendant trying to get out of the bathtub and Saner pushing defendant back into the tub and under the bath water. Specifically, Parks testified as follows:

"[PARKS]: * * * There was a commotion in the bathroom. I go to the bathroom and I just noticed yelling, a lot of yelling. I noticed that [defendant] was in the bathtub and um—he was trying to get out of the bathtub, and I noticed that Mr. Saner was preventing that from happening, and—

"[DEFENSE COUNSEL]: How was he preventing it from happening?

"[PARKS]: It—he was preventing it from happening by him using his hands and pushing him into the tub. So [defendant] was trying to get out of the tub. He was pushing him back. And I seen him go underneath the water a few times.

"[DEFENSE COUNSEL]: When you sa[w] him go underneath the water, was it his head and—

"[PARKS]: Yeah.

"[DEFENSE COUNSEL]: Okay. So was—explain exactly what happened. * * * Mr. Saner did what? He pushed—

"[PARKS]: So Saner was just infuriated. You know, just yelling and screaming. [Defendant] was doing the same thing too. And [defendant] was trying to, you know, get out of the tub. He was, you know, forcefully pushing him into the tub. And you know—and this happened, you know quite a few times, and then I got involved and stopped the situation.

"* * * * *

"[DEFENSE COUNSEL]: How much of [defendant's] body was under the water when he got shoved into it?

"[PARKS]:   He was fully submersed.

"[DEFENSE COUNSEL]:   Head and all?

"[PARKS]:   Yes.

"[DEFENSE COUNSEL]: And that was done by Mr. Saner?

"[PARKS]:   Yes."

The trial court excluded Parks's testimony about the March 7 bathroom incident on the ground that defendant had already testified about what was in his mind at the time of the alleged crimes and that Parks's testimony would improperly bolster defendant's testimony. The court explained:

"THE COURT:   [T]he focus is on what was in the defendant's mind. He's already testified to that. So how does a third party relating the incident—which, by the way, when he related it was really quite different in many ways, not particularly helpful. How does that support the claim of self-defense which I think it has to be related? *I think that if you're offering \* \* \* someone to testify about a specific act, it then—he becomes someone who's bolstering your client's position that he reacted in self-defense.*

"[DEFENSE COUNSEL]:   Yes.

"THE COURT:   I'm not going to let him bolster.

"[DEFENSE COUNSEL]:   Okay.

"THE COURT:   So that's my ruling."

(Emphasis added.)

At trial, Saner and defendant gave conflicting testimony about what happened during the March 7 bathroom incident and March 9 incident.

Regarding the March 7 bathroom incident, defendant testified as described above: that Saner came into the bathroom, yelled at him, and pushed him down. For his part, Saner testified that he was frustrated because defendant would not turn down his music, so he went into the bathroom and asked defendant, "[H]ow do you like me being in your space? I'm in your bubble." Saner testified that

defendant "instantly started waving his hands and tried to come at me and I was laughing." Saner testified that he did not reach toward or touch defendant, but that defendant flailed around, tore down the shower curtain, and kicked the toilet.

Regarding the March 9 incident, which led to the charges against defendant, defendant testified that Saner emptied a window-washing bucket that belonged to defendant and threw it in the mud. When defendant asked Saner why he did that, Saner began to taunt and push him. According to defendant, Saner called him names, swore at him, and pushed him backward three times. Defendant testified that, after Saner had pushed him—and in light of what Saner had done during the March 7 bathroom incident—he believed that Saner was going to hurt him, so he hit Saner. Specifically, on direct examination, defendant told the jury that he "didn't understand why the hostility was happening," and that he was "confused" and "afraid [Saner] was going to do something" because Saner was "right in [his] face." He testified that Saner was "being very aggressive" and reiterated that he was "confused" and "scared."

When questioned by the prosecutor, defendant acknowledged that Saner did not make any verbal threats and was not pushing hard enough to knock him down, but that Saner was taunting and shoving him. Defendant testified that Saner's "whole behavior was totally threatening" and, based on that behavior, he believed that Saner was going to hurt him. Defendant testified that he did not step toward Saner; instead, "[Saner] kept going out to me, I'm backing up, and then finally I hit him." The prosecutor asked defendant why he hit Saner:

"[PROSECUTOR]: Did you hit him because you were mad at him?

"[DEFENDANT]: I was definitely mad and definitely frustrated but—

"[PROSECUTOR]: Did you hit him because you were mad at him?

"[DEFENDANT]: It's self-defense. He had his hands on me—

"[PROSECUTOR]:   Okay.

"[DEFENDANT]:   —a number of times."

Defendant further testified that, due to events that had occurred between him and Saner, when he hit Saner he was "[a]ngry, hurt, frustrated, all of it."

Regarding the March 9 incident, Saner testified that he emptied defendant's window-washing bucket, which upset defendant. According to Saner, defendant started to yell and scream at him. Saner testified that he tried to walk away, but defendant lunged at him twice, hit him in the face, and then pushed him down and hit him in the back multiple times.

The investigating officer, Hall, testified that she called defendant on the afternoon of March 9, but he "refused to meet [her] that day." Defendant moved for a mistrial on the ground that Hall's testimony was a "comment on [defendant's] silence." The trial court denied the motion, stating, "I'm not going to grant a mistrial. I don't think that it's a comment on his silence."

As mentioned, the jury found defendant guilty of both counts of assault in the fourth degree, and defendant appeals the resulting judgment, raising four assignments of error. In his first assignment of error, defendant asserts that the trial court erred in excluding Parks's testimony about the March 7 bathroom incident. In his second assignment of error, defendant asserts that the trial court erred in excluding his own testimony about the March 4 television incident, and in his third assignment of error, defendant asserts that the trial court erred in excluding Parks's testimony about that incident. In his fourth assignment of error, defendant asserts that the trial court erred in denying his motion for a mistrial based on Hall's testimony that defendant had refused to meet with her.

Defendant's first, second, and third assignments of error relate only to Count 1, to which defendant claimed self-defense. Defendant's fourth assignment of error relates to both Count 1 and Count 2.

We begin by addressing defendant's first assignment of error: that the trial court erred by excluding Parks's testimony about the March 7 bathroom incident. On appeal, defendant asserts that the evidence was admissible under OEC 404(1), which provides, "Evidence of a person's character or trait of character is admissible when it is an essential element of a charge, claim or defense." If evidence of a person's character is admissible under OEC 404(1), "proof may be made by testimony as to reputation or by testimony in the form of an opinion," OEC 405(1), and "proof may also be made of specific instances of conduct of the person," OEC 405(2). Whether evidence is admissible under OEC 404(1) is a question of law, which we review for errors of law. *See State v. Whitney-Biggs*, 147 Or App 509, 527-28, 936 P2d 1047, *rev den*, 326 Or 43 (1997).

A defendant charged with a crime for using physical force against another person may raise the defense of self-defense. ORS 161.209 provides that, except under circumstances not relevant here:

> "[A] person is justified in using physical force upon another person for self-defense * * * from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

Thus, the applicability of the defense of self-defense depends, *inter alia*, on whether the defendant reasonably believed that the alleged victim had used, or was about to use, unlawful physical force.

When a defendant raises the defense of self-defense, evidence of the alleged victim's prior violent acts toward the defendant is admissible under OEC 404(1). *State v. Lunow*, 131 Or App 429, 885 P2d 731 (1994). In *Lunow*, the defendant, who was charged with assault in the fourth degree and harassment, raised the defense of self-defense. In support of his defense, the defendant sought to testify that, a few days before the incident that gave rise to the charges against him, the alleged victim had hit him with her cast, knocking him to the floor.[2] The trial court excluded the evidence, and we reversed, holding:

---

[2] The defendant also sought to present testimony by two witnesses, but he did not make an "offer of proof as to the content of the specific incidents that the

"The plain language of OEC 404(1) permits evidence of a person's character when it is an essential element of a defense. 'Reasonable belief' is an element of the defense of self-defense. To the degree that defendant's belief that he needed to defend himself depended on [the victim's] character, that character was placed 'in issue.' *The incident when [the victim] hit defendant three times with her cast, knocking him to the floor, was probative of the conduct against which defendant would have reasonably believed it necessary to protect himself.* It was error to exclude defendant's testimony of the specific incident."

*Id.* at 435-36 (brackets in *Lunow*; internal citations omitted; emphasis added).[3]

In this case, as in *Lunow*, evidence of the alleged victim's prior violent acts was relevant to the reasonableness of defendant's belief that he needed to defend himself. Specifically, evidence that, on March 7, Saner had pushed defendant repeatedly when defendant was trying to get out of the bathtub and that Saner had done so with such force that he submerged defendant's head under the water was relevant to whether defendant believed, as he claimed, that Saner was about to use unlawful physical force against him during the incident on March 9 that gave rise to the charges in this case. Under *Lunow*, Saner's character was at issue, and evidence regarding the March 7 incident was probative of that character. Therefore, the trial court erred in excluding Parks's testimony regarding the March 7 incident.[4]

---

witnesses would relate," and, therefore, we could not determine "if the trial court erred in limiting [the] witnesses to reputation and opinion testimony." *Lunow*, 131 Or App at 436 n 6.

[3] As we noted in *Whitney-Biggs*, Professor Kirkpatrick "takes issue with *Lunow*'s analysis but not with its result":

"'Although the court reached the right result, a preferred ground of decision would be that OEC 404 does not regulate this type of evidence at all. OEC 404 does not address all possible uses of 'character' evidence. Evidence of a victim's prior acts of violence, provided they are known to the defendant, have long been admissible to show the defendant's reasonable belief in the need to use self-defense.'"

147 Or App at 528 n 19 (quoting Laird C. Kirkpatrick, *Oregon Evidence*, 28 (2d ed Supp 1995)).

[4] Because we conclude that Parks's testimony was admissible under OEC 404(1), we do not address defendant's alternative argument that Parks's testimony was admissible under OEC 404(3).

The state acknowledges that "the trial court may have erred when it excluded [Parks's] testimony on the ground that it constituted improper 'bolstering' of defendant's testimony about [the March 7 incident.]" Improper bolstering occurs when a party attempts to enhance a witness's credibility either in an impermissible manner or at an impermissible time. *See State v. Charboneau,* 323 Or 38, 44-48, 913 P2d 308 (1996) (describing examples of improper bolstering). But, as the state observes in its brief, "there is nothing improper about a party 'bolstering' its case by presenting evidence that corroborates that party's version of the facts."

Although the state acknowledges that "it appears that the trial court erred by excluding [Parks's] testimony on the ground that it constituted improper bolstering[,]" the state argues that any error was harmless. *See* Or Const, Art VII (Amended), § 3 (if "the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed"); OEC 103 (evidentiary error is not reversible "unless a substantial right of the party is affected"). According to the state, even if the jury had heard Parks's testimony regarding the March 7 bathroom incident, the jury would have rejected defendant's self-defense theory because defendant's own testimony, "as a whole, reflects that defendant hit Saner because Saner provoked defendant until defendant was angry enough to hit him."

Evidentiary error is harmless if there is "little likelihood that the error affected the verdict." *State v. Davis,* 336 Or 19, 32, 77 P3d 1111 (2003). When determining whether there is little likelihood that a trial court's erroneous exclusion of evidence affected a jury's verdict, we review the record and consider the "content and character of [the] evidence, as well as the context in which it was offered." *State v. Klein,* 352 Or 302, 314, 283 P3d 350 (2012). When doing so, we focus on "the possible influence of the error on the verdict rendered, not whether this court, sitting as a factfinder, would regard the evidence of guilt as substantial and compelling." *Davis,* 336 Or at 32. That is, "we do not determine, as a factfinder, whether the defendant is guilty. That inquiry would invite this court to engage improperly

in weighing the evidence and, essentially, retrying the case, while disregarding the error committed at trial[.]" *Id.*

If erroneously excluded evidence "relates to a 'central factual issue' in the case, it is more likely to have affected the jury's determination than if it deals with a tangential issue." *State v. Johnson*, 225 Or App 545, 550, 202 P3d 225 (2009) (quoting *State v. Marrington*, 335 Or 555, 566, 73 P3d 911 (2003)). "By contrast, if the particular issue to which the error pertains has little relationship to the issues being determined by the jury, then there is less likelihood that the error affected the verdict." *Johnson*, 225 Or App at 550 (citing *Marrington*, 335 Or at 566).

*State v. Griffin*, 19 Or App 822, 529 P2d 399 (1974), a case similar to this one, is instructive. In *Griffin*, the defendant was charged with murder for shooting the alleged victim, Lyman. The defendant claimed that he shot Lyman in self-defense and sought to present a witness to testify about the effects of alcohol on Lyman. The trial court excluded the evidence, a jury convicted the defendant, and the defendant appealed.

On appeal, the defendant challenged the trial court's exclusion of the evidence regarding the effects of alcohol on Lyman. We reversed, concluding that the exclusion of the evidence was error and that it was prejudicial. Regarding the prejudice, we explained,

> "A great deal of defendant's claim of self-defense was predicated upon his assertion that he believed Lyman had a gun and fully intended to kill defendant and Carol Lyman. The jury may well have been more inclined to believe defendant's version of the events preceding the shooting, including his claim that Lyman initiated an unprovoked attack, had it been presented with testimony regarding Lyman's unpredictable swings of mood and potentially violent behavior while intoxicated."

*Id.* at 833-34.

In this case, as in *Griffin*, we conclude that the trial court's erroneous exclusion of defendant's proffered evidence was prejudicial. Whether defendant acted in self-defense when he hit Saner was the "central factual issue" at trial.

*Marrington*, 335 Or at 566. Defendant and Saner offered competing versions of the events of March 9; each claimed that the other was the initial aggressor. As described above, defendant testified that, based in part on the March 7 bathroom incident, he believed that Saner was about to hurt him and that he needed to protect himself during the March 9 incident. As in *Griffin*, the jury may well have been more inclined to believe defendant's testimony about his belief that Saner was about to hurt him on March 9 if it had been presented with Parks's testimony that Saner had used physical force against defendant on March 7. Parks's testimony would have corroborated and supplemented defendant's testimony about Saner's actions on March 7 and, thereby, would have supported defendant's claim that he acted in self-defense on March 9.[5]

We cannot accept the state's argument that the trial court's erroneous exclusion of the evidence was harmless in light of defendant's testimony. As mentioned, the state argues that defendant's testimony "as a whole, reflects that defendant hit Saner because Saner provoked defendant until defendant was angry enough to hit him." The state acknowledges that defendant testified that he was afraid of Saner because of the bathroom incident but argues that "the balance of [defendant's] testimony reflects that his act of hitting Saner stemmed from anger and frustration at the taunting, rather than any sense of need to protect himself."

As we understand it, the state's argument is that defendant's testimony is internally inconsistent and we should resolve the inconsistencies by crediting defendant's statements that he was angry and frustrated but not his statements that he was afraid and believed that Saner was going to hurt him. We decline to do so for two reasons. First,

---

[5] The state does not contend, nor could it, that Parks's testimony about the March 7 bathtub incident was merely cumulative. Although defendant had testified to the March 7 bathroom incident, Parks's proffered testimony was not duplicative of defendant's, because it was qualitatively different. It was more specific than defendant's; only Parks testified that Saner pushed defendant completely underwater. It was also from a different perspective; Parks was a third party, both to the March 7 incident and to the criminal prosecution. As a result, a jury might give greater weight to Parks's testimony than defendant's testimony, both because Parks observed the March 7 incident without being involved in it, except to terminate it, and because Parks did not have the same stake in the outcome of the prosecution.

it is debatable whether defendant's testimony is internally inconsistent. The fact that defendant testified that he felt emotions other than fear does not establish that defendant did not also feel fear. Indeed, it does not strike us as unusual that a person would feel multiple strong emotions during the March 9 incident, as defendant described it, especially given that the incident occurred in the context of a deteriorating roommate relationship. Second, and more importantly, even if there are inconsistencies in defendant's testimony, it is the role of the trier of fact to resolve them. *Davis*, 336 Or at 32 (reviewing court is to focus on "the possible influence of the error on the verdict rendered, not whether [the reviewing] court, sitting as a fact-finder, would regard the evidence of guilt as substantial and compelling"). What defendant believed when he hit Saner is a question of fact, to be resolved by the trier of fact. Here, as a result of the trial court's erroneous exclusion of Parks's testimony, the trier of fact did not have the benefit of all of the available evidence relevant to that question and, therefore, remand for a new trial on that count is required.

In sum, we conclude that, as defendant asserts in his first assignment of error, the trial court committed reversible error in excluding Parks's testimony about the March 7 bathtub incident. The evidence was admissible under OEC 404(1), and the exclusion of it denied defendant the opportunity to present available evidence that was relevant to the central factual dispute regarding Count 1. Accordingly, we reverse and remand for a new trial on Count 1.

Because we remand for a new trial on Count 1 and the evidentiary record and legal arguments may develop differently on remand, we decline to address defendant's second and third assignments of error, which, as described above, relate to the exclusion of evidence of Saner's verbal aggression toward defendant during the March 4 television incident.

We turn to defendant's fourth assignment of error: that the trial court erred in denying his motion for a mistrial based on Hall's testimony that defendant "refused to meet [her]" on March 9. On appeal, defendant argues that Hall's testimony constituted an improper comment on defendant's

exercise of his right to remain silent under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution and that the trial court's denial of his motion for a mistrial requires reversal because the jury likely drew the impermissible inference that, based on his decision not to speak with the officer, defendant was guilty.

The state responds that Hall's testimony did not constitute a comment on defendant's invocation of his right to remain silent and, even if it did, the court did not abuse its discretion in denying defendant's motion for a mistrial.

We review a trial court's denial of a motion for a mistrial for abuse of discretion. *State v. Larson*, 325 Or 15, 22, 933 P2d 958 (1997). "[I]t is usually reversible error to admit evidence of the exercise by a defendant of the rights which the constitution gives him if it is done in a context whereupon inferences prejudicial to the defendant are likely to be drawn by the jury." *State v. Smallwood*, 277 Or 503, 505-06, 561 P2d 600 (1977). Nevertheless, "[i]f there is little likelihood that any inference adverse to the defendant could be drawn by the trier of fact, reference to defendant's exercise of [the] constitutional right is not prejudicial error." *State v. Williams*, 49 Or App 893, 897, 621 P2d 621 (1980) (citing *Smallwood*, 277 Or at 506; *State v. Nulph*, 31 Or App 1155, 572 P2d 642, *rev den*, 282 Or 189 (1977)).[6]

*Larson* is instructive. In *Larson*, the defendant moved for a mistrial after the prosecutor commented on the defendant's failure to testify. The trial court denied the motion, and the Oregon Supreme Court affirmed. After considering the record, the court held that, although the prosecutor's comment on the defendant's failure to testify was improper under both the state and federal constitutions, the context of the comment was not one in which the jury was likely to draw prejudicial inferences against the defendant.

---

[6] Defendant recognizes that we typically review a trial court's denial of a motion for mistrial for abuse of discretion, but he asserts that we should review for legal error in this instance because the trial court's decision was "'not singularly a matter of discretion, but a question of law calling for an application of a rule of law to a particular set of facts[.]'" *State v. Rogers*, 330 Or 282, 310, 4 P3d 1261 (2000) (quoting *Yundt v. D & D Bowl, Inc*, 259 Or 247, 256, 486 P2d 553 (1971)). We are unpersuaded by defendant's argument and decline to modify our standard of review for a trial court's denial of a mistrial.

*Larson*, 325 Or at 23-24. The Supreme Court noted that the prosecutor made only a single reference to the defendant's failure to testify; that the comment was directed to the judge, not the jury; and that the comment was made in frustration, in the course of objecting to the defendant's repeated attempts to introduce inadmissible hearsay. "Under those circumstances, the trial court was faced with a question that it could decide either way." *Id.* at 25. The Supreme Court therefore held that the trial court did not abuse its discretion when it denied the defendant's motion for a mistrial. *Id.* at 23.

Here, assuming, without deciding, that the officer's testimony constituted an improper comment on defendant's exercise of his right against self-incrimination, we hold that the trial court did not abuse its discretion in denying defendant's motion for a mistrial.[7] The officer made only a single comment regarding defendant's decision not to meet with her. Neither the officer nor the prosecutor referred to the comment again. *See State v. Farrar*, 309 Or 132, 164, 786 P2d 161 (1990) (trial court did not abuse its discretion in denying the defendant's motion for a mistrial after a witness referred to a polygraph examination, when the reference was isolated, did not mention the result of the test, and the state did not argue that the jury should draw any particular inference from the reference). As in *Larson*, 325 Or at 25, "the trial court was faced with a question that it could decide either way." The trial court did not abuse its discretion in denying defendant's motion for a mistrial.

In sum, we conclude that, as defendant asserts in his first assignment of error, the trial court erred in excluding Parks's testimony relevant to Count 1 and the error was not harmless. Accordingly, based on that assignment of error, we reverse and remand for a new trial on Count 1, and do not reach defendant's second and third assignments of error, which relate to that count. We also conclude that, as the state asserts in response to defendant's fourth assignment of error, even if Hall's testimony that defendant

---

[7] *See, e.g., State v. Lotches*, 331 Or 455, 497, 17 P3d 1045 (2000) (assuming, without deciding, that prosecutor's alleged gesticulations constituted improper comment on a witness's testimony, that conduct was not so prejudicial that the trial court abused its discretion in denying defendant's motion for a mistrial).

refused to meet with her constituted a comment on defendant's invocation of his right to remain silent, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Reversed and remanded for a new trial on Count 1; otherwise affirmed.