Argued and submitted May 26, reversed and remanded August 24, 2016

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## HORACIO BASUA,
*Defendant-Appellant.*

Benton County Circuit Court
14CR16445; A158555

380 P3d 1196

David B. Connell, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Nani Apo, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Wilson, Senior Judge.

## ORTEGA, P. J.

Defendant appeals his conviction for two counts of second-degree sexual abuse, ORS 163.425,[1] asserting evidentiary error. In his first assignment of error, defendant contends that the court erred by excluding evidence of his character for sexual propriety as allowed by OEC 404(2)(a).[2] In his second assignment, defendant argues that the court erred by excluding impeachment evidence. Because we agree with defendant that the court erred by not allowing character evidence of defendant's sexual propriety, and the error was not harmless, we reverse and remand for a new trial.[3]

Generally, when considering an appeal from a judgment of conviction, "we view the evidence presented in the light most favorable to the state. However, in our assessment of whether the erroneous admission [or exclusion] of disputed evidence was harmless, we describe and review all pertinent portions of the record[.]" *State v. Eckert,* 220 Or App 274, 276, 185 P3d 564, *rev den,* 345 Or 175 (2008) (internal citations omitted); *see also State v. Beisser,* 258 Or App 326, 328-29, 308 P3d 1121 (2013) (describing the evidence defendant sought to present and "the evidence relevant to the issues on appeal that the parties presented at trial"). We state the facts consistently with that standard.

Defendant was a friend and coworker of L's boyfriend, and, although defendant and L had previously met, they were not close friends. On the day of the incident in question, L attended defendant's birthday party, which was held in defendant's home. Defendant and L drank heavily

---

[1] Under ORS 163.425(1)(a), a person commits second-degree sexual abuse if the "person subjects another person to sexual intercourse [or] deviate sexual intercourse * * * and the victim does not consent thereto[.]"

[2] OEC 404(2) provides, in part:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

[3] Given our disposition, we do not reach defendant's second assignment of error. *See State v. Beisser,* 258 Or App 326, 339, 308 P3d 1121 (2013) (declining to address the remaining assignments of evidentiary error where the court remanded the case for a new trial on the first assignment).

over the course of the day and were very intoxicated by the end of the night. At around 11:30 p.m., one of defendant's friends helped him get to his bed, which was located in the basement of the house. Later, L also ended up in defendant's bed, though it is unclear how that happened. L remembers being carried there, but she does not know by whom.

L testified at trial that, while in defendant's bed, she heard a man's voice complimenting her and also recalled her bottom being touched. At that time, she did not know who the voice belonged to, except that she knew it was not her boyfriend's voice. L recounted that the man pulled down her pants, performed oral sex on her, and then penetrated her vagina with his penis. She recalled that, in response to her saying "no" a couple of times and that she "loved [her] boyfriend," the man "shushed" her and told her "it was fine." L testified that she did not fight the man and "gave up" because she did not think she could stop what was happening. L stated that, throughout the incident, she drifted in and out of consciousness until she passed out, and, as a result, she does not remember everything that happened.

L testified that, when she woke up, defendant was asleep in his bed with his pants still down. At that point, L left defendant's home, still feeling "delirious and confused and dizzy" from the alcohol. She then went to the hospital where she was examined and provided a rape kit. L reported the incident to police and was interviewed at the hospital.

Following L's report, police contacted defendant and swabbed his penis to test for DNA. The results of those tests indicated, in relevant part, the presence of L's epithelial (skin) cells. Defendant was charged with one count of first-degree rape (Count 1), one count of first-degree sodomy (Count 2), and two counts of second-degree sexual abuse (Counts 3 and 4).

At trial, defendant testified that he did not have any recollection of what happened on the night of his birthday party. He remembered drinking and playing cards earlier in the evening (around 6:00 p.m.) and then waking up the next morning (around 6:00 a.m.) covered in urine and with vomit

on his pillow.[4] Defendant's theory of defense, as best we can tell, was that, because he and L did not remember everything (or most) of what happened on the night of the incident, there was insufficient evidence to conclude, beyond a reasonable doubt, that L had not given consent.[5] Accordingly, defendant tried to establish possible reasons why L claimed to not have given consent, including the possibility that she simply did not remember having done so or that she had lied because she regretted cheating on her boyfriend. Defendant also sought to introduce, under OEC 404(2)(a), testimony by a female friend, Gauthier, of his character for sexual propriety. He made an offer of proof outside the presence of the jury indicating that Gauthier would testify that she had known defendant for about two years, that she had spent time with him while he and she were intoxicated, and that, in her opinion, defendant was "appropriate around women." The state objected to Gauthier's proffered testimony. The court ultimately concluded that the offer of proof did not meet what OEC 404(2)(a) requires and excluded the testimony. A jury found defendant guilty of two counts of second-degree sexual abuse and acquitted him on the counts of first-degree rape and sodomy.

Defendant assigns error to the court's exclusion of Gauthier's proffered testimony because, under *State v. Enakiev*, 175 Or App 589, 29 P3d 1160 (2001), in a case involving a sexual crime, opinion evidence regarding a defendant's character for sexual propriety is admissible under OEC 404(2)(a).

Once more, OEC 404(2) provides, in part:

"Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

---

[4] Several of defendant's friends testified about his state of intoxication and indicated that he "didn't function at all," "wasn't walking straight," and had "trouble standing." Defendant also introduced as evidence a photo taken by one of his friends where he is passed out on the floor and appears to have urinated on himself.

[5] In closing arguments, defense counsel stated, "So basically this case boils down to you have to believe every word that [L] said in order to convict [defendant], except that we know she's not a reliable historian." Counsel further stated, "The fact that [L] doesn't remember * * * doesn't mean that she didn't consent."

"(a)   Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

In *Enakiev*, we explained that

"in instances where character is not 'an essential element of a charge, claim or defense,' character evidence proffered by the defense under OEC 404(2)(a) is admissible only if: (1) the evidence concerns a 'trait of character'; (2) that trait is 'pertinent' to the crime charged; (3) the evidence is offered in the proper form under OEC 405, and (4) the evidence was not of 'specific instances of conduct.'"

175 Or App at 594.

Here, defendant notes that Gauthier was well acquainted with defendant and was prepared to give her opinion regarding his sexual propriety. Furthermore, he argues that the court's error in excluding that evidence was not harmless. According to defendant, because the case depended "entirely" on L's credibility, and her testimony was "shaky" in multiple respects, evidence of defendant's character for sexual propriety could have affected the verdict.[6]

The state, in turn, argues that, although the court's exclusion of Gauthier's proffered testimony was "likely error," we should nevertheless affirm defendant's conviction because the error was harmless. The state acknowledges that evidence of a defendant's character for sexual propriety is admissible where, as here, it is relevant to the crime charged; however, it asserts that any error by the court in excluding such evidence in this case was harmless because there was little likelihood that Gauthier's proffered testimony would have affected the jury's verdict. The state contends that the testimony would have been unhelpful to the jury's deliberations because "nothing indicates that Gauthier had ever been in defendant's bed with him while drunk, or that she had observed defendant in such a situation with someone else." That is, according to the state, because Gauthier's observations of defendant's sexual propriety "did not extend to intimate situations between defendant and other women when no one else was around," her testimony would have had minimal relevance.

---

[6] On appeal, defendant acknowledges that "the evidence established the likelihood that some kind of sexual activity occurred."

Notwithstanding the state's apparent concession of error, we review the trial court's ruling regarding the admissibility of defendant's sexual propriety evidence under OEC 404(2)(a) for legal error. *Enakiev*, 175 Or App at 593 & n 4.

Having reviewed the record, we conclude that the OEC 404(2)(a) admissibility requirements set out in *Enakiev* were satisfied in this case. *First*, evidence of a person's character for "sexual propriety" qualifies as a character trait for the purposes of OEC 404(2)(a). *Id.* at 595 ("[S]exual propriety is materially indistinguishable from the other examples of character traits * * * and is properly deemed a character trait."). *Second*, evidence of defendant's character for sexual propriety is pertinent to this case. Evidence is pertinent "if it has 'any tendency' to make the existence of a fact of consequence 'more or less probable than it would be without the evidence.'" *Id.* at 596 (relying on OEC 401's definition of relevant evidence).[7] Here, defendant was charged with various sex crimes, and the central issue of fact was whether defendant engaged in sexual acts with L without her consent. Thus, evidence of defendant's character for sexual propriety is pertinent, because it could tend to show that, on the night in question, defendant would not have acted in a sexually inappropriate manner by engaging in sexual acts without L's consent. *See id.* (concluding that evidence of the defendant's character for sexual propriety was pertinent where defendant "was accused of harassment 'by touching the sexual or intimate parts' of another" without her consent). *Third*, defendant offered the character evidence in the proper form under OEC 405. Under that rule, "[i]n all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion." OEC 405(1). Here, defendant made an offer of proof indicating that Gauthier would testify as to her belief that defendant was sexually appropriate around women. Thus, the evidence was properly in the form of an opinion. *Finally*, the record does not indicate that defendant sought to introduce evidence of "specific instances of conduct." Rather, as stated

---

[7] We note that "OEC 401 provides a 'very low threshold' for the admission of evidence[.]" *State v. Davis*, 336 Or 19, 25, 77 P3d 1111 (2003).

above, the evidence that defendant sought to introduce was in the form of Gauthier's opinion. Because each of the OEC 404(2)(a) requirements were satisfied, the court erred by not allowing Gauthier's proffered testimony.

Having concluded that the court erred in excluding the evidence in question, we next address the state's assertion that defendant's conviction should nevertheless be affirmed because the error was harmless. Under Article VII (Amended), section 3, of the Oregon Constitution, we "must affirm a judgment, despite any error committed at trial, if, after considering all the matters submitted, [we are] of the opinion that the judgment 'was such as should have been rendered in the case.'" *State v. Davis*, 336 Or 19, 28, 77 P3d 1111 (2003). Thus, in cases like this one, we must determine "whether, after we review the record, we can say that there was little likelihood that the erroneous exclusion of the witness statements affected the jury's verdict." *Id.* at 32. To be clear, that determination "is a *legal conclusion* about the likely effect of the error on the verdict," and "not a finding about how the court views the weight of the evidence of the defendant's guilt." *Id.* (emphasis added).

In assessing whether or how the erroneous exclusion of evidence may have affected a jury's verdict, the Supreme Court has identified several factors that we may consider. Those factors include the nature and context of the error, whether the evidence would have been regarded as duplicative or unhelpful by the jury, and, in a criminal case, the relationship between the evidence and the defendant's factual theory of the case. *Id.* at 33-34. Generally, we consider evidence that relates to a central issue in the case as having a greater likelihood of affecting the verdict than evidence that concerns a tangential issue. *Beisser*, 258 Or App at 337.

In this case, we cannot say that there was little likelihood that the erroneous exclusion of Gauthier's proffered testimony affected the jury's verdict. To begin with, the evidence is not duplicative of any other evidence in the record. Further, the evidence is relevant to the central issue of consent in this case. In particular, evidence of defendant's character for sexual propriety could have supported a finding that he would not have proceeded with sexual relations with

L in the face of her protestations that she did not want to, because, presumably, a person who is sexually appropriate around women would not engage in sexual acts with another but for that person's consent. Given that defendant could not recollect whether he had been sexually appropriate in this specific instance, evidence of his general sexual propriety could have substituted for his inability to recollect and thus call into question L's version of events. Without Gauthier's proffered testimony, defendant was denied an opportunity to support his claim that he would not have engaged in sexual conduct without the consent of the other person. Ultimately, Gauthier's proffered testimony provided necessary context for defendant's factual theory of the case and "tended to complete the picture of defendant's version of the events." *Davis*, 336 Or at 34.

The state asserts that any error in excluding Gauthier's opinion testimony was harmless because her testimony would have said little about what defendant would do under circumstances more similar to those in this case. However, the state's position effectively asks us to assign particular weight to the evidence and the inferences to be drawn from it. Although we view the evidence in the context of the entirety of the record, "we do not determine, as a factfinder, whether the defendant is guilty." *Id.* at 32. Our appellate function is much more limited. The question we must answer is whether, as a matter of law, there was little likelihood that the error affected the verdict. *See id.* Here, because we cannot conclude, without assigning our own weight to the evidence, that there was little likelihood that the erroneous exclusion of Gauthier's proffered testimony affected the jury's verdict, a new trial is required.

Reversed and remanded.