Argued and submitted June 20, reversed and remanded for new trial
August 8, 2001

STATE OF OREGON,
*Respondent,*

*v.*

IVAN ENAKIEV,
*Appellant.*

D9806378M; A106911

29 P3d 1160

Timothy M. Bowman argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy

Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals from a judgment of conviction for one count of harassment, ORS 166.065(1), and one count of harassment by touching the sexual or intimate parts of another. ORS 166.065(4).[1] Defendant assigns error to the trial court's refusal, under OEC 404(2)(a), to allow him to present evidence of his character for sexual propriety. We agree with defendant that the court erred in excluding the proffered character evidence and that the error was not harmless. Accordingly, we reverse and remand for a new trial.

This prosecution arose from interactions between defendant and the complainant, D, on the evening of December 15, 1998. Defendant, a recent immigrant from Moldavia, was living with his family at an apartment complex in Washington County. D was also a tenant in the complex. On the evening of December 15, defendant was near the apartment complex's garage facilities preparing to vacuum his car when D drove to her garage to retrieve Christmas decorations. The two began to talk, speaking briefly about their children.

At trial, D testified that she became uncomfortable during the conversation, which she said defendant initiated, because defendant "was asking * * * so many questions" and because his eyes dropped to her chest on a couple of occasions. D further testified that, when she went to the back of her garage to retrieve the holiday decorations, she heard the garage door start to close. Fearing the defendant was going to rape her, D went to the front of the garage and confronted defendant, telling him: "I have four people waiting for me right now." D testified that, in response, defendant said, "You have nice breasts. I want to touch your breasts" and reached out and grabbed her breast.

Defendant's description of the encounter was different. At trial, defendant testified that D initiated the conversation, during which they talked about their children and

---

[1] Harassment is a Class B misdemeanor. ORS 166.065(3). Harassment by touching the sexual or other intimate parts of another is a Class A misdemeanor. ORS 166.065(4).

defendant's ability to speak Russian.[2] According to defendant, while D was at the back of her garage, the light in her garage began to blink, indicating that the light, which operates on a timer, was about to go out. Consequently, D asked defendant to push a button to keep the light from shutting off, which he did. D then came from the back of the garage, and asked defendant to press the button again. As defendant turned to press the button, his shoulder brushed against D's body. Defendant said he was sorry in Russian, and D said something to him in response, put some boxes in her car, and drove away.

Defendant was charged with harassment and harassment by touching the sexual or intimate parts of another under ORS 166.065.[3] At trial, defendant sought to put on testimony from six witnesses—defendant's wife, the pastor of his church, the pastor's wife, the associate pastor, a male friend of defendant, and a young woman who had known defendant before he immigrated from Moldavia—each of whom would testify as to defendant's character for sexual propriety. The trial court, citing OEC 404(2)(a), excluded the testimony.

"It's my opinion and I've held under (2)(a) before that a pertinent trait of character is one for peaceful, law-abiding, honest, truthful, temperate, not beyond that. So [to] bring it in to show that he's of a good moral character or wouldn't do a thing like this, it does not come in."

---

[2] Defendant speaks Russian, Romanian, Bulgarian, and some English. At trial, defendant testified through a Russian language interpreter.

[3] ORS 166.065 provides, in part:

"(1) A person commits the crime of harassment if the person intentionally:

"(a) Harasses or annoys another person by:

"(A) Subjecting such other person to offensive physical contact; or

"(B) Publicly insulting such other person by abusive words or gestures in a manner intended and likely to provoke a violent response;

"* * * * *

"(3) Harassment is a Class B misdemeanor.

"(4) Notwithstanding subsection (3) of this section, harassment is a Class A misdemeanor if a person violates subsection (1) of this section by subjecting another person to offensive physical contact and the offensive physical contact consists of touching the sexual or other intimate parts of the other person."

In response, defendant made an offer of proof that each of the six witnesses would testify that he or she: (1) had known defendant for a period of years; (2) had observed defendant in social situations; (3) had had the opportunity to form an opinion about defendant's character with respect to sexual propriety; and (4) believed that defendant's character in that respect is excellent. Ultimately, the jury found defendant guilty on both counts. The trial court merged the two counts and sentenced defendant to two years of probation.

On appeal, defendant assigns error to the trial court's exclusion of his proffered "sexual propriety" character evidence under OEC 404(2)(a). Defendant further argues that, because his credibility was central to his defense, the error was not harmless:

> "This is a classic case of 'he said/she said.' No evidence is in the record to corroborate [D's] allegations. Evidence concerning [defendant's] excellent character in respect to sexual propriety, standing alone, would be enough to raise a reasonable doubt as to his guilt."

The state, in response, concedes that it was error to exclude defendant's "sexual propriety" evidence under OEC 404(2)(a), but argues that that error was harmless. In addition, the state suggests that, even if the error was not harmless, the evidence was nevertheless properly excluded under OEC 701—and that, while that ground for exclusion was not raised below, we should remand the case for the trial court to assess, in the first instance, the admissibility of the evidence under that rule.

 We begin by determining whether, as a matter of law, evidence of defendant's "sexual propriety" was properly admissible under OEC 404(2)(a).[4] *See* ORS 136.310 (construction of rules of evidence is a question of law). OEC 404, which governs the admissibility of character evidence offered by a criminally accused, states, in relevant part:

---

[1] Notwithstanding the state's concession of error, we review the trial court's ruling as to the admissibility of defendant's "sexual propriety" evidence for errors of law. *See State v. Bea*, 318 Or 220, 224, 864 P2d 854 (1993) (declining to accept the state's concession as to a legal conclusion). *See also Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.").

"(1) Evidence of a person's character or trait of character is admissible when it is an essential element of a charge, claim or defense.

"(2) Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:

"(a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

The form of evidence offered under OEC 404(2)(a) is governed by OEC 405(1):

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

Thus, in instances where character is not "an essential element of a charge, claim or defense," character evidence proffered by the defense under OEC 404(2)(a) is admissible only if: (1) the evidence concerns a "trait of character"; (2) that trait is "pertinent" to the crime charged; (3) the evidence is offered in the proper form under OEC 405, and (4) the evidence was not of "specific instances of conduct." *See State v. Reeder*, 137 Or App 421, 423-25, 904 P2d 644 (1995), *rev den* 322 Or 598 (1996) (the defendant could not prove character trait with specific instances of conduct). Each of those cumulative requirements is satisfied here.

In *State v. Marshall*, 312 Or 367, 823 P2d 961 (1991), the court delineated the types of evidence that reflect a "trait of character":

"Character evidence, therefore, is evidence of a particular human trait, such as truthfulness, honesty, temperance, carefulness, or peacefulness, *etc.* A person's character with respect to truthfulness means that person's propensity to tell the truth in all the varying situations of life. A person's character with respect to carefulness means that person's propensity to act with care in all the varying situations of life." *Id.* at 372.

Defendant, relying on *Marshall*, suggests that "sexual propriety" is just such a trait:

"Is 'sexual propriety' a character trait? Looking at the non-exclusive list of character traits mentioned in *Marshall*, it would certainly seem that 'sexual propriety' would fit within that category. 'Truthfulness' has to do with speaking the truth; 'honesty,' assuming it is not merely redundant of truthfulness, has to do with not stealing or cheating others, *see State v. Bailey*, 87 Or App 664, 667-68, 743 P2d 1123 (1987); 'temperance' has to do with moderation and self-control, particularly in respect to the use of alcohol or other intoxicants; 'carefulness' implies the exercise of care and attention in all of one's activities, and interestingly, has only slight positive moral connotations; and 'peacefulness' has to do with tranquility and non-violence. 'Sexual propriety' has positive moral connotations much like truthfulness and honesty, it suggests self-control relative to sexual matters much like temperance suggests self-control relative to intoxicants, and it implies sexual non-aggressiveness and consideration for others much like peacefulness suggests these qualities in respect to the use of physical force. 'Sexual propriety' is a character trait."

*See also* OEC 405 Commentary (1981) (describing permissible methods of proving character; noting that historically "character has been regarded primarily in moral overtones susceptible of proof by reputation evidence (is the person *chaste*, peaceable, truthful?)") (emphasis added).

We agree. Evidence of a person's character with respect to sexual propriety evinces that person's propensity to act in a sexually proper manner "in all the varying situations of life." *Marshall*, 312 Or at 372.[5] In that sense, sexual propriety is materially indistinguishable from the other examples of character traits enumerated in *Marshall* and is properly deemed a character trait.

Evidence of defendant's sexual propriety is admissible, however, only if it is "pertinent." OEC 404(2)(a). As used in OEC 404(2)(a), a "pertinent" character trait is one that is relevant to the offense charged. *State v. Bailey*, 87 Or App

---

[5] *See also* Laird C. Kirkpatrick and Christopher B. Mueller, 1 *Federal Evidence* § 101 at 551 (2nd ed 1994) ("character evidence means proof relating to commonly-recognized human qualities that might be called innate or essential to the person being described").

664, 667, 743 P2d 1123 (1987) (character evidence is admissible under OEC 404(2)(a) *"only if* the trait is pertinent *to the offense charged"*) (emphasis in original); *see also* Laird C. Kirkpatrick, *Oregon Evidence,* 135 (3rd ed 1996) ("What constitutes a pertinent character trait depends upon the crime charged. A reputation for honesty would be irrelevant to a crime of violence, and a reputation for nonviolence would be irrelevant to a crime of larceny."). Thus, evidence of defendant's "sexual propriety" is pertinent if it has "any tendency" to make the existence of a fact of consequence "more or less probable than it would be without the evidence." OEC 401 (defining relevant evidence).

Here, defendant was accused of harassment "by touching the sexual or intimate parts" of another. ORS 166.065. Defendant argues that, given the nature of those charges, evidence of his "sexual propriety" was directly probative of a fact of consequence: "To grab the breast of a neighbor without her consent is simply not an act a person of excellent sexual propriety would be likely to commit." We agree. Evidence of defendant's character for excellent "sexual propriety" certainly would tend to show that, on the particular occasion in question, defendant did not act in a sexually improper manner. Consequently, evidence of defendant's "sexual propriety" is pertinent evidence under OEC 404(2)(a).[6]

Finally, the evidence that defendant sought to present—testimony from six witnesses as to their belief that defendant's character for sexual propriety is excellent—was in the proper form and did not constitute specific instances of conduct. *Reeder,* 137 Or App at 424; OEC 405. Accordingly,

---

[6] Other jurisdictions have similarly construed and applied their analogues to OEC 404. *See State v. Anderson,* 211 Mont 272, 292, 686 P2d 193, 204 (1984) (recognizing that evidence of the defendant's sexual mores and good character functioned to establish his reputation "for morality and personal truthfulness—conduct and beliefs inconsistent with the charges filed against him"); *State v. Miller,* 709 P2d 350, 353-54 (Utah 1985) (agreeing with the defendant that evidence of his reputation for sexual morality was pertinent to the charged crime of sexual abuse of a child).*de novo But see State v. Jackson,* 46 Wash App 360, 365, 730 P2d 1361, 1364 (1986) (concluding that evidence of the defendant's sexual morality was not pertinent to the charged crime of statutory rape: "One's reputation for sexual activity, or lack thereof, may have no correlation to one's actual sexual conduct. Simply put, one's reputation for moral decency is not pertinent to whether one has committed indecent liberties or incest.").

the trial court erred in not admitting evidence of defendant's character for "sexual propriety."

The state nevertheless contends that the error was harmless. We disagree. The result in this case turned, unavoidably, on credibility. If the jury believed D's rendition of the facts, as it apparently did, it would convict defendant. Conversely, if the jury believed defendant's version of the facts, it would acquit him. Thus, as defendant suggests, this was a classic swearing match in which evidence of defendant's propensity to act in a sexually proper manner could have raised a reasonable doubt in the minds of the jury as to defendant's guilt regarding both the harassment by touching the sexual or other intimate parts of another count *and* the simple harassment count against defendant. *See State v. Kitzman*, 323 Or 589, 612-15, 920 P2d 134 (1996) (suggesting that, where a witness's credibility is crucial, prejudicial error as to one count against a defendant may spill over to and prejudice other counts). The error was not harmless. *State v. Hansen*, 304 Or 169, 180, 743 P2d 157 (1987) (evidentiary error harmless if there is little likelihood that the error affected the verdict).

Finally, the state suggests that, even if the error is not harmless, we should remand the case to the trial court to determine whether the evidence of defendant's character for sexual propriety, while admissible under OEC 404(2)(a), should nevertheless be excluded under OEC 701.[7] The state argues particularly:

"Here, even assuming *arguendo* that the witnesses' opinions were based on adequate personal knowledge and were rationally based on the witnesses' perceptions, the trial court would not have abused its discretion in excluding the lay opinion testimony as not being helpful to the jury. * * * Nothing indicates that any of defendant's witnesses

---

[7] OEC 701 states:

"If the witness is not testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to those opinions or inferences which are:

"(1) Rationally based on the perception of the witness; and

"(2) Helpful to a clear understanding of testimony of the witness or the determination of a fact in issue."

had ever been alone with him or knew anything about how he might behave when he was with a stranger, was not in a 'social' situation, and was not being observed by others. Therefore, defendant's witnesses' opinions had, at most, minimal relevance here, and they would have been of little, if any, help to the jury."

The state acknowledges, however, that the issue of admissibility under OEC 701 was not raised to the trial court. The state further acknowledges that, if the objection had been raised, the record might have developed differently.[8] Given those circumstances, we decline to consider the state's contention, which is, essentially, a variant of the "right for the wrong reason" doctrine.[9] *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (summarizing the "right for the wrong reason" principle; appellate courts should affirm trial court's ruling on alternative ground only where "the record [is] materially * * * the same one that would have developed had the prevailing party raised the alternative basis for affirmance below"); *State ex rel Juv. Dept. v. Pfaff*, 164 Or App 470, 476-79, 994 P2d 147 (1999), *rev den* 331 Or 193 (2000) (same). A new trial is required. *See, e.g., State v. Ventris*, 164 Or App 220, 232, 991 P2d 54 (1999) (requiring new trial where evidentiary error was not harmless).

Reversed and remanded for new trial.

---

[8] At oral argument, counsel for defendant suggested that, had the state raised an OEC 701 objection below, defendant might have refined his offer of proof by clarifying the "social" situations in which defendant's character witnesses had observed defendant. The state, in response, candidly acknowledged that there was "some possibility" that defendant would have amplified his description of those social situations in the face of an OEC 701 objection.

[9] In the classic "right for the wrong reason" scenario, a respondent urges us to affirm the judgment on grounds other than those adopted by the trial court. Here, the state's contention is more aptly styled as "maybe right for the wrong reason." That is, given that OEC 701 requires the trial court to exercise its discretion, *State v. Lerch*, 296 Or 377, 383, 677 P2d 678 (1984), the state urges us to *remand* the case to the trial court so that that court may consider, in the first instance, a ground never presented to it at trial—and then, depending on how the court rules, defendant's conviction may (or may not) be vacated.