Argued and submitted October 5, 2021, affirmed May 25, petition for review denied September 1, 2022 (370 Or 212)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

Tyler W. NEES,
aka Tyler Nees, aka Tyler Wayne Nees,
*Defendant-Appellant.*

Multnomah County Circuit Court
17CR79888; A173885

511 P3d 67

Defendant appeals a judgment of conviction for murder constituting domestic violence, ORS 163.115. Prior to trial, defendant received seven court-appointed attorneys. Before appointing defendant's seventh attorney, the court warned defendant that he would not receive another attorney if he continued to engage in behavior that contributed to the breakdown of the attorney-client relationship. The court then explained to defendant the benefits of counsel and the risks associated with proceeding to trial *pro se*. Nevertheless, defendant threatened his seventh attorney. The court then allowed that attorney to withdraw and informed defendant that he would be representing himself at trial. On appeal, defendant challenges that decision. He argues that the court's warnings and explanations were not specific enough to adequately apprise him of the consequences that could occur if his last attorney withdrew. *Held*: The trial court did not err. The court was not required to notify defendant of every potential harm that could arise as a result of his behavior. Rather, the court was required to inform defendant of the advantages and disadvantages of proceeding *pro se*; a duty that the court fulfilled.

Affirmed.

Angel Lopez, Judge.

George W. Kelly argued the cause and filed the briefs for appellant.

Jordan R. Silk, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Egan, Presiding Judge, and Pagán, Judge, and DeVore, Senior Judge.*

_____

* Pagán, J., *vice* DeHoog, J. pro tempore.

EGAN, P. J.

Affirmed.

**EGAN, P. J.**

Defendant appeals a judgment of conviction for murder constituting domestic violence, ORS 163.115. He raises three assignments of error as well as *pro se* supplemental assignments of error. We write to address only his second assignment of error and reject the other assignments without discussion. Defendant assigns error to the trial court's decision to require him to proceed to trial without counsel in violation of Article I, section 11, of the Oregon Constitution and the Sixth Amendment to the United States Constitution.[1] We conclude that the record is sufficient to support a finding that defendant made a knowing and intentional waiver of his right to counsel. Accordingly, we affirm.

The pertinent facts are undisputed and mostly procedural. Defendant stabbed his father, who named defendant as his assailant in a deathbed identification. Defendant was arrested and, shortly thereafter, indicted. Over the next two years, while defendant's case was pending, the trial court appointed seven attorneys to represent defendant. For various reasons, the court allowed three sets of two attorneys, and one additional and final attorney, to withdraw from representation of defendant.

Defendant complained that his first set of attorneys were not providing him with access to case law or discovery and were not contacting witnesses who could attest to his character. After defendant insisted that he either be allowed a substitution of counsel, or to proceed *pro se*, the court allowed those attorneys to withdraw.

The trial court then appointed defendant his third and fourth attorneys. Several months later, defendant again requested a hearing for the purpose of asking the court to substitute counsel, at which he complained:

"[T]he representation you guys are giving me is hindering my defense. *** They're not allowing me to see my

---

[1] Article I, section 11, provides, in part, "In all criminal prosecutions, the accused shall have the right *** to be heard by himself and counsel[.]" The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall *** have the Assistance of Counsel for his defense."

discovery, which I have a right to a discovery, and I have a right to get witnesses in my defense, and they're not doing that. *** Are they going to actually get me my discovery? I'm charged with a serious crime, charged, and I'm innocent until proven guilty."

Defendant stated that he was firing his attorneys and demanded new counsel; however, those attorneys continued to represent him at that time. At a hearing one month later, defendant again complained that his attorneys were not following up with his witnesses and were taking too long acquiring discovery. Thereafter, defendant's relationship with his third and fourth attorneys continued to deteriorate. For instance, two months later, defendant spat on one of his attorneys in the court room. Two weeks after that, defendant's attorneys requested permission to withdraw, citing a breakdown in the professional relationship. The court granted their request and then appointed two more attorneys—defendant's fifth and sixth.

Defendant's relationship with those attorneys was fraught as well. On one occasion, a sheriff's deputy overheard defendant say, "If [his attorney] trucks me off during the trial, I'm going to grab her by her hair, drag her around the room, and beat her senseless."

At a subsequent confidential hearing, defendant again voiced his frustrations with counsel:

"Well, [the attorneys] came on my case about nine months ago. And I've had problems with my two prior attorneys. And due to those problems, they had a conflict with me. They didn't want to see me; they didn't want to talk to me. They didn't want to come in and really go over my discovery. ***

"So I can't ask about anything. I've never been able to go over any of the motions prior to being filed. And there's problems with the motions that have been filed."

Defendant reiterated that his attorneys had not contacted witnesses, had not followed up on his requests for discovery, and were not filing the motions that he wished to file. Defendant's attorneys responded:

"[DEFENDANT'S FIFTH ATTORNEY]: [W]ithout getting into any specifics, in the discussions in the jury

room things got particularly heated, which resulted in me not wanting to be next to [defendant] at all throughout any court proceeding for the rest of—the duration of the case[.]

"And also, his actions caused me to believe that the breakdown in communications are pretty deteriorated in terms of I wouldn't have much confidence in his having any confidence in us \*\*\*. \*\*\* [B]ased on his actions, I think that trust is gone. And I certainly—I think perhaps he might be prejudiced by having Defense counsel who doesn't want to sit next to him throughout the duration of the trial.

"[DEFENDANT'S SIXTH ATTORNEY]:  And just to add on to that \*\*\*. And I discovered some things later—or earlier today that also makes me feel that I am uncomfortable sitting next to [defendant] during any court proceedings. And I, too, believe that would be prejudicial to [defendant] during trial \*\*\*."

The court agreed to appoint a new attorney, but warned defendant, "[Y]ou're not going to get a new attorney next time if you engage in behavior that contributes to the breakdown of your attorney-client relationship. Okay?" The court reiterated:

"[I]f you engage in behavior that contributes to the breakdown of [the] attorney-client relationship, I'm not required to appoint new counsel[.]

"And if I find that your counsel in the future are performing adequately, meeting their constitutional obligations, then you're not entitled to get a new attorney. You're not entitled to get a new attorney because you're refusing to communicate with someone, because you filed a Bar complaint, or [for] similar reasons."

The court and defendant then engaged in the following colloquy:

"THE DEFENDANT:  [Y]ou're going to tell me that I'm going to be forced to go *pro se*?

"THE COURT:  I'm giving you the attorneys who I believe will be competent, they'll be certified. They'll be able to represent you and perform competently. They are certified under the rules of the State of Oregon to be able to do so in this kind of case, which is a \*\*\* complicated case.

"And—but you're not entitled to any attorney of your choosing, and you're not entitled to create problems with your attorney. So, there are risks and disadvantages if you were *** to represent yourself right now, and I'm not necessarily going to require you to represent yourself in the future.

"There are risks and disadvantages, though, if you are—do represent yourself, and those are that you lack legal training and experience and may not realize defenses that are available to you. There—you, as a lawyer, don't understand the rules and procedures of a trial that will apply to you, even though you're not a lawyer. And the State is represented by an attorney and has an advantage over you.

"There are benefits that you give up when you represent yourself at trial, rather than having an attorney. An attorney can help review the facts of your case to determine what defenses you have and identify problems with the State's case against you.

"An attorney can help you in your case by helping you determine whether you want to enter a plea bargain or not, help you negotiate a plea instrument—plea agreement.

"An attorney knows how to gather evidence, file pretrial motions, call witnesses[,] cross-examine State's witnesses, [and] also conduct direct examination.

"We've talked about the Rules of Evidence. You were following your attorney's argument with the Judge today regarding admission of evidence statements. An attorney understands the Rules of Evidence and knows how to question witnesses and present evidence ***.

"An attorney knows when and how to object to the use of improper evidence, which is what [your attorney] was describing earlier today. Can help you decide if you should have a jury trial or a Judge trial and can help you evaluate and challenge potential jurors.

"An attorney knows how to make legal arguments to the Court and present opening and closing statements to the jury.

"An attorney can tell you what sentence may be imposed if you're found guilty and can help you present evidence and make arguments about sentencing issues.

"An attorney knows how to get information from the Prosecutor that is important to your case, such as police reports and statements from witnesses.

"And the Judge, the District Attorney, and the Court staff cannot give you any legal advice or help you defend yourself at trial.

"So, those are the risks and disadvantages that you have if you are to represent yourself at trial. ***

"So, did you hear me go through these risks?

"THE DEFENDANT:   Yes, I did.

"THE COURT:   And did you understand them all?

"THE DEFENDANT:   Sure.

"THE COURT:   So if, in the future, if you come back requesting new counsel[.]

"THE DEFENDANT:   I haven't requested new counsel.

"THE COURT:   I know. If you do, the Court is not likely to grant a motion for a new attorney in the future on the grounds that there [is] a breakdown in the attorney-client relationship if it is based on you disagreeing with actions that your attorney is taking that I found are actions reasonable to take.

"If you are disagreeing with actions your attorneys are not taking, that I find are actions that are reasonable not to take.

"Based on your refusing to communicate with counsel, based on explicitly or implicitly threatening counsel, or for any other similar reasons that are related to your contributions to the breakdown of attorney-client relationship.

"If that is the situation, when you come back asking for a new counsel, then future conduct of that sort will be considered by me to be an implied waiver of the right to counsel ***.

"So, that's an order that I'm signing because it's an order granting substitution of counsel and notice of risks and disadvantages of self-representation, and of the possibility of an implied waiver of the right to counsel. I'm going to give you this, a copy of this form."

The trial court appointed a seventh attorney. However, six months into that representation, defendant's attorney asked the court for permission to withdraw after defendant "made a statement along the lines of I'd better watch my back when [defendant] gets out." The court then allowed defendant an opportunity to explain why he was dissatisfied with counsel. After defendant explained his dissatisfaction, the court read from the record the warning that defendant had previously received and told defendant that he would be representing himself at trial, which was scheduled to begin the following Monday—three days later. Defendant repeatedly protested the timing of the trial and the court's decision to proceed without another substitution of counsel, arguing that he needed time for discovery and to file motions. After defendant continued to object and interrupt the court, he was removed from the courtroom. That Monday, prior to *voir dire*, defendant reiterated his objections and claimed that he did not have access to his file or discovery over the weekend. The jury trial proceeded as scheduled, went on for nine days, and the jury ultimately found defendant guilty. This timely appeal followed.

On appeal, defendant contends that the trial court erred when it allowed his attorney to withdraw and then required him to represent himself at trial three days later. Defendant concedes, and we agree, that the risks of self-representation had been generally explained to defendant. However, defendant asserts that the court's notice was not specific enough to adequately apprise him of the consequences that could occur if his last attorney withdrew. We disagree.

We review a trial court's decision to grant a motion of withdrawal of counsel for abuse of discretion but, when the court grants a defense counsel's motion to withdraw and requires a defendant to proceed *pro se*, we review for legal error the question "whether the defendant knowingly and intentionally waived his *** right to counsel." *State v. Garrett*, 299 Or App 744, 746, 451 P3d 612 (2019).

Article I, section 11, guarantees a criminal defendant the right to counsel. However, a defendant may waive that right if they do so knowingly and intentionally. *State v.*

*Langley*, 351 Or 652, 669, 273 P3d 901 (2012). The "knowing" component refers to a defendant's knowledge and understanding of the right to counsel and focuses primarily on whether the defendant is aware of the risks of self-representation. *State v. Guerrero*, 277 Or App 837, 846-47, 373 P3d 1127 (2016). "The 'intentional' component, on the other hand, refers to whether a defendant has intentionally—either expressly or through continued misconduct following a sufficient court warning—chosen to proceed without counsel." *Garrett*, 299 Or App at 751 (quoting *State v. Clardy*, 286 Or App 745, 760, 401 P3d 1188 (2017)). "Because we are reluctant to find that a defendant has waived a fundamental constitutional right, 'a valid waiver will not be presumed from a silent record.'" *State v Borba*, 290 Or App 787, 796, 417 P3d 430 (2018) (quoting *State v. Meyrick*, 313 Or 125, 132, 831 P2d 666 (1992)).

　　　　We begin with the knowledge component. For a waiver to be valid, a defendant must receive a warning regarding the "dangers and disadvantages of self-representation." *Meyrick*, 313 Or at 133. "An on-the-record colloquy is the preferred method of establishing that a defendant knowingly waived the right to counsel." *State v. Haines*, 283 Or App 444, 451, 388 P3d 365 (2017).

　　　　Defendant argues that, although he was generally warned of the risks of self-representation, the trial court failed to warn him of the specific circumstance he found himself in; namely, that he would be forced to proceed in a nine-day murder trial on three-days' notice, without access to his file, and without time to review his discovery or file motions. But the trial court engaged in an extensive colloquy with defendant in which it warned him of the dangers of proceeding *pro se* and advised him of the benefits of counsel. Moreover, in that same colloquy, prior to allowing defendant's fifth and sixth attorneys to withdraw, the court explained the role of other ancillary constitutional rights to defendant and explained the impact that proceeding *pro se* would have on those rights.

　　　　This is not a case where the warning was too abstract or general to establish that defendant did not understand the risks of proceeding *pro se*. *See State v. Erb*, 256 Or App

416, 423, 300 P3d 270 (2013) (concluding that a written waiver stating that the defendant was "aware of the help a lawyer might be to me" was insufficient); *State v. Culver*, 198 Or App 267, 270-71, 108 P3d 104 (2005) (stating that a trial court asking the defendant whether he understood that he would be "at a disadvantage" if he represented himself was insufficient). Here, the court's warning was unambiguous and clear. That warning was immediately followed by a detailed explanation of the specific tasks counsel could perform for defendant. When asked if he understood those disadvantages and risks, defendant affirmed that he did. The trial court was not obligated to further warn defendant of potential and highly specific unforeseen circumstances that could arise if he ended up having to proceed *pro se*. *See Meyrick*, 313 Or at 134 ("The failure of a trial court to impart a particular piece of information to a defendant will not, of itself, require reversal of a conviction if the record as a whole shows that the defendant knew of his or her right to counsel and that the waiver of counsel was an intentional relinquishment or abandonment of that known right."). We conclude that defendant knowingly waived his right to counsel, and next address whether his waiver was intentional.

An intentional waiver of the right to counsel need not be express. *See Langley*, 351 Or at 669 ("A defendant's conduct may serve as a valid waiver so long as the conduct adequately conveys the defendant's knowing and intentional choice to proceed in court without counsel."). Here, neither party argues that defendant expressly waived his right to counsel. We therefore analyze whether defendant's conduct adequately conveyed his intentional choice to proceed without counsel. *See Clardy,* 286 Or App at 760.

An intentional waiver of counsel by conduct may be implied when three conditions have been met:

"(1) [E]ngaging in repeated misconduct in the attorney-client relationship that defeats the ability of counsel to carry out the representation function; (2) an advance warning [to the defendant] that continuation of [his or her] abusive behavior would result in being forced to proceed *pro se* and; (3) a reasonable opportunity for the defendant to present his or her position on the facts in a manner that

permits, if appropriate, the safeguarding of confidential communications and trial strategy from public disclosure."

*Clardy*, 286 Or App at 761 (internal quotation marks omitted).

Defendant does not challenge either the first or third condition. Thus, we only address the second condition, in which defendant, citing *Guerrero*, argues that the court was required to ensure he understood the risks and disadvantages of self-representation before he engaged in additional acts of misconduct that formed the predicate for implied waiver. 277 Or App at 846. However, contrary to defendant's assertion, the court's warning occurred after it allowed defendant's fifth and sixth attorneys to withdraw, but *before* defendant's continued misconduct—threating his seventh attorney—caused him to proceed *pro se*. We disagree with defendant's assertion that the court was required to put him on notice that further misconduct would lead to him having to proceed *pro se*. Having already notified defendant of that risk, the court was under no obligation to warn defendant again after he disregarded the previous warning.

In sum, defendant knowingly and intentionally waived his right to counsel by his repeated misconduct. Misconduct is not limited to refusal to cooperate with counsel. Recalcitrant behavior, like threats of violence toward counsel, may give rise to an implicit waiver of counsel. *See Langley*, 351 Or at 670 ("[R]ecalcitrant behavior toward counsel can move beyond noncooperation and become misconduct that defeats the ability of counsel to carry out the representation function."). The trial court repeatedly notified defendant that his conduct could result in his having to proceed *pro se*. And the court provided defendant with a thorough explanation of the risks and disadvantages of proceeding to trial *pro se*. Nevertheless, defendant continued to act in a way that put his counsel in a position that they could no longer represent defendant. The court was not required to give notice to defendant regarding every potential harm that could arise as a result of his behavior.[2]

_____

[2] To the extent that defendant contends, under his second assignment of error, that the court erred in (1) failing to grant him a continuance or (2) failing to ensure that he had access to his file and discovery prior to trial, or (3) that those errors combined with an inadequate warning regarding what could

Rather, the court was required to inform defendant of the advantages and disadvantages of proceeding *pro se*; a duty that the court fulfilled.

Affirmed.

occur if defendant's final attorney withdrew amounted to a violation of defendant's constitutional rights, those contentions do not comply with ORAP 5.45 for challenging separate rulings by the court. Thus, we reject them without further discussion as part of our resolution of defendant's second assignment of error. *See* ORAP 5.45(2) ("Each assignment of error must be separately stated under a numbered heading."); ORAP 5.45(3) ("Each assignment of error must identify precisely the legal, procedural, factual, or other ruling that is being challenged."); ORAP 5.45(6) ("Each assignment of error must be followed by [an] argument."); ORAP 5.45(5) ("Under the subheading 'Standard of Review' each assignment of error must identify the applicable standard or standards of review, supported by citation to the statute, case law, or other legal authority."); *see also Landauer v. Landauer*, 221 Or App 19, 23-24, 188 P3d 406 (2008) ("The grouping of a trial court's rulings under a single assignment of error hinders evaluation of each individual ruling on its merits and is a practice that should not be followed.").