No. 307 April 22, 2026 531

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMY VERLEE HALL,
*Defendant-Appellant.*

Lane County Circuit Court
21CR53964; A180831

Stephen W. Morgan, Judge.

Argued and submitted November 25, 2024.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. On the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and John Evans, Deputy Public Defender, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals a judgment of conviction for first-degree burglary, ORS 164.225, third-degree assault, ORS 163.165, harassment, ORS 166.065, second-degree disorderly conduct, ORS 166.025, and second-degree criminal trespass, ORS 164.245, assigning four errors. First, defendant contends that the trial court erred in concluding that she waived her right to counsel through misconduct. Second and third, defendant asserts that the trial court erred in excluding evidence about her character under OEC 404(2). Fourth, she argues that the trial court plainly erred in instructing the jury to assume that witnesses who take an oath to tell the truth speak truthfully and how that assumption may be overcome.

We conclude that the trial court's finding that defendant had engaged in repeated misconduct in the attorney-client relationship is supported by the record, that defendant's repeated misconduct followed the court's warnings on the record about the risks of proceeding without counsel and that such misconduct would result in defendant having to proceed *pro se*, and that defendant was afforded a reasonable opportunity to present her position on the facts supporting her complaints about counsel. We further conclude that the trial court did not err in excluding defendant's proffered character evidence because it was not offered in the proper form as required by OEC 405. Finally, we conclude that any error in instructing the jury to presume that sworn witnesses speak the truth is not plain. We therefore affirm.

We briefly state the background facts giving rise to defendant's charges and provide additional facts in our analysis of each assignment of error. In November 2021, defendant and Collin entered Crumb Together, a bakery in downtown Eugene that required patrons to wear masks pursuant to the state mandate during the COVID-19 pandemic. Defendant and Collin were not wearing masks, and Collin was recording the encounter for his YouTube channel to "test" a rumor that the owner had "pulled a bat" on someone for not wearing a mask. The bakery's owner, D, asked defendant and Collin to comply with the mask requirement or leave the store. Defendant and Collin refused, insisting

that D could not deny them public services under federal law, nor lawfully exclude them from the store.

D attempted to "usher" defendant out of the store, and when D's chest made contact with defendant, defendant pushed D. D retrieved a baseball bat from behind the counter and told defendant and Collin to leave or she would use "reasonable force" to get them to do so. One of them wrested the bat free from D, and they continued to struggle with D, as defendant threw several punches to D's head. Collin left the bakery with D's bat but continued to record the altercation. When D eventually curled up on the floor, defendant and Collin walked away while taunting her and reported to two police officers they encountered nearby that D had assaulted them. Collin directed police to evidence of the assault on his ongoing YouTube livestream entitled "Crumb Together Nazi."

At trial, defendant represented herself and testified that she and Collin had gone to the bakery to give the owner a flyer for their YouTube channel and to "offer information," but that the situation "did not go the way that [they] expected" and "escalated very quickly from [them] just talking to having to defend [them]selves." The jury found defendant guilty on all the charged counts.

## WAIVER OF COUNSEL

In her first assignment of error, defendant argues that the trial court erred in concluding that she waived her right to counsel through misconduct. "We review a trial court's decision to grant a motion of withdrawal of counsel for abuse of discretion but, when the court grants a defense counsel's motion to withdraw and requires a defendant to proceed *pro se*, we review for legal error the question whether the defendant knowingly and intentionally waived [their] right to counsel." *State v. Nees*, 319 Or App 725, 732, 511 P3d 67, *rev den*, 370 Or 212 (2022) (internal quotation and ellipses omitted).

The facts relevant to this assignment are procedural. On November 4, 2021, the state jointly charged defendant and Collin, and the court appointed counsel for defendant from the Lane County Defense Consortium (LCDC). In

January 2022, counsel Brinson successfully moved to modify defendant's release conditions to allow contact with Collin through counsel to pursue a joint defense. On January 12, Brinson requested a setover because Collin "unfortunately has discharged his attorney and we are waiting for him to be appointed a new attorney so that we can proceed jointly."

On February 1, 2022, Brinson moved to withdraw as counsel and for appointment of substitute counsel. In support of the motion, Brinson declared that "withdrawal is required and appropriate in this case" under Oregon Rules of Professional Conduct (ORPC) 1.6 and ORCP 1.7 and Oregon State Bar Formal Ethics Opinion No. 2011-185.[1] Brinson further declared that "no attorneys from LCDC [were] available to represent" defendant, that attorneys with the Public Defender Services of Lane County were "also unable to represent" defendant, but that LCDC had asked the Oregon Public Defense Commission to find an attorney to represent her.

On February 3, Thompson, an attorney from Bend, filed a notice stating that he had been "appointed by the Court" as attorney for defendant. That same day, a different lawyer, Criswell, appeared for defendant and requested a setover because Thompson had just been appointed. On February 11, and without holding a hearing, the presiding judge entered an order granting Brinson's motion to withdraw and appointing substitute counsel *nunc pro tunc* to February 3.

On March 14, Criswell again appeared for defendant and requested a setover because Thompson had not had a chance to review the discovery with defendant. On

---

[1] ORPC 1.6 provides that a lawyer generally "shall not reveal information relating to the representation of a client[.]" ORPC 1.7 provides that a lawyer generally "shall not represent a client if the representation involves a current conflict of interest."

Oregon State Bar Formal Ethics Opinion No. 2011-185 construes ORPC 1.6 to advise that a lawyer may not choose to unilaterally provide the court with certain client information in a motion to withdraw, including "My client will not listen to my advice" and "My client will not cooperate with me," unless the client gives informed consent. The Bar reasoned that such information "seem[s] likely to constitute information to the representation of a client" within the meaning of ORPC 1.6, because "the information would be embarrassing or would be likely to be detrimental to the client."

April 18, Thompson appeared for defendant and reported that defendant had requested his withdrawal:

> "[COUNSEL THOMPSON:]   I'd like to proceed to settlement conference, but I don't think my client is satisfied with her representation. So I believe she wants me to withdraw and see if another attorney can be appointed in my stead before she moves forward, is that accurate?
>
> "THE COURT:   [Defendant]—
>
> "[DEFENDANT]:   That's fine."

On May 2, Thompson filed a motion to withdraw due to "a major breakdown in [the] attorney-client relationship" and because defendant had "demanded [his] withdrawal." On May 5, Thompson appeared before the presiding judge on his motion, and the court deferred ruling on the motion until defendant was present:

> "THE COURT:   Yeah, I think I'm not inclined to act on it unless I have [defendant] here to talk to her about the reason for the withdrawal, you know, if it's a personality thing, I need to talk to her about giving her a heads-up that it's probably not going to be a case where she gets to withdraw or have an attorney withdraw again for that reason, so we'll just reset this and we'll try to get ahold of [defendant]."

At a remote hearing on May 16, the presiding judge inquired why defendant was seeking Thompson's withdrawal:

> "THE COURT:  All right, so, [defendant], it looks like the motion to withdraw, you're the one that's asking Mr. Thompson to withdraw, is that right?
>
> "[DEFENDANT:]   Well, Mr. Thompson is required to withdraw because he can't provide me effective counsel, according to ORS Chapter 244, ORS 9.460, OARs Chapters 199, rules of professional conduct, Oregon Judicial Department policy statements, the US Code of Federal Regulations, code of ethics, there's no attorneys you guys have provided me that are willing to follow the law and the constitution.[2]

_____

   [2]  ORS chapter 244 governs ethics of public officials and employees; ORS 9.460 sets forth duties of attorneys; OAR chapter 199 governs the Oregon Government Ethics Commission; The Oregon Rules of Professional Conduct apply to members

"THE COURT:   Are you asking to represent yourself?

"[DEFENDANT:]   I'm asking that if you guys are going to put me through this process that you give me effective counsel."

The court responded that "this is a tough thing" because "[y]ou qualify for court-appointed counsel," but "[y]ou don't get to pick your attorney." Defendant agreed that she was entitled to "adequate" court-appointed counsel.

The court then proceeded to explain that it would not appoint substitute counsel and that defendant would be waiving her right to counsel if she insisted that Thompson withdraw:

"THE COURT:   So you've already gone through two, I'm not going to appoint you another one, because I think you're just going to try and fire that one. So let me go over the things that you will have to do on your own if you decide to waive your right to attorney by firing a second one.

"[DEFENDANT:]   I'm not waiving my right to anything, I mean, I think I'm asking for effective counsel, you guys are putting me through this, you have to provide me with effective counsel—

"THE COURT:   So then Mr. Thompson's your attorney, that's it—

"[DEFENDANT:]   Mr. Thompson's not my attorney, no—

"THE COURT:   Those are—

"[DEFENDANT:]   —no, Mr. Thompson withdrew himself.

"THE COURT:   No, that doesn't work that way. He's appointed by the court, just like Mr. Brinson was appointed by the court.

"[DEFENDANT:]   Right, and Mr. Brinson withdrew himself.

"THE COURT:   Right, but at that time—

of the Oregon State Bar; Oregon Judicial Department policy statements govern judges and their staff; and the Code of Ethics for Government Service, H R Con Res 175, 85th Cong, 72 Stat, pt 2, B12 (1958), sets forth ethical standards for federal public officials and employees.

"[DEFENDANT:]   Right.

"THE COURT  :—we had a conversation with you about these kind of conflicts happen over and over, they're unlikely to change just because we give you a new attorney—[3]

"[DEFENDANT:]   And the conflicts are only happening because you guys aren't abiding by the law—

"THE COURT:   No—

"[DEFENDANT:]   —and the rules that apply to you, these rules don't apply to me, they apply to you—

"THE COURT:   I think you—

"[DEFENDANT:]   —I'm a private natural person, I have natural unalienable rights, I don't have all these rules to go by, you do, you guys are putting me through this process, not me—

"THE COURT:   So, [defendant]—

"[DEFENDANT:]   —you have the burden of proof, you have the burden to make sure that I have appointed, court-appointed attorney—

"THE COURT:   I'm going to go over—

"[DEFENDANT:]   —that is adequate in doing their duties."

The court then said that it was "going to go over some things" with defendant and would "mute" defendant if she interrupted. The court then explained:

"THE COURT:  All right, so you qualify for court-appointed counsel, you have the right to hire your own attorney if you'd like to. You do not have a right to choose which attorney the court appoints for you. If you elected to go forward on your own, you will have to investigate the case yourself, you will have to negotiate with the District Attorney's Office yourself, you will have to go through the discovery process on your own, you'll have to figure out the legal or factual defenses that may be available for you, you will have to file any pretrial motions on your own without

---

[3] There is no prior conversation with defendant about Brinson's withdrawal in the record. The court may have been referring to the May 5 hearing at which Thompson was present, but defendant was not.

the assistance of counsel, you will have to negotiate any potential resolution without the assistance of counsel. If you decide to \* \* \* go forward on your own, you will have waived your right to have an attorney present with you at trial, an attorney who could explain the process with you, help you pick a jury, raise any pretrial motions, or requesting assistance from the court. You will have waived the right to have an attorney with you when you call your own witnesses and how to subpoena those witnesses. You will waive the right to have an attorney with you when you cross-examine the State's witnesses. An attorney can help you prepare for closing argument and, if you are convicted, help prepare you for a situation in which you may have to put the best light forward going in front of \* \* \* a judge for sentencing, so these are all the things that \* \* \* you will have to do on your own."

The court proceeded to make findings about why Brinson had moved to withdraw and warned defendant that if she continued to insist that Thompson withdraw, she would be waiving her right to court-appointed counsel:

"THE COURT: As I looked at the file, you were appointed Cooper Brinson in November of 2021. In February of 2021 [*sic*] you because of a personality conflict—

"[DEFENDANT:]   No—

"THE COURT:   —resulted in Mr. Brinson withdrawing—

"[DEFENDANT:]   No—

"THE COURT:   —at that time no other attorney was willing to take your case either in the Lane County Public Defenders Office or the Lane County Defense Consortium. Mr. Thompson is an attorney from out of our jurisdiction, out of our area, and he took your case on, so your choices are either stay with Mr. Thompson or you will in fact be waiving your right to have counsel because we've gotten no one else who's willing to take your case, right, we've got to mute you already today because you won't—so this is—you keep on saying it's not your problem. It is going to be your problem. There's no getting out of this situation, there is no saying, there's no saying 'I don't want this attorney and I don't want that attorney' and so the case is just going to go away, we're at the point where you are by your inability to get along with your attorneys and asking for them to with-draw, you are waiving your right to counsel. And so that's

kind of—we've muted you because you keep on talking and saying no, but I'm going to unmute you and I want to make sure that you understand that's the situation and what we'll do is we'll just pick—set this case for trial and we'll go forward with trial. You can hire your own attorney, you can come to me and say 'Hey, I think I've made a horrible, horrible mistake, and I want somebody to be reappointed,' but we don't, we don't have an attorney for you, you have burned through the people who are willing to take your cases. And again you burned through them because of your behavior, not anyone else's. You understand, [defendant]—

"[DEFENDANT:] So what you're—yes, sir, what you're trying to do, get me to do, Jay,[4] is trying to get me to abide in the unlawful administration of justice, I won't do that, you're lucky I even showed up to this. You guys put me through this, you find me an attorney, and you figure out how to get out of this.

"THE COURT:   All right. So the motion to withdraw is granted, I find that by operation of her inability to get along with her court-appointed counsel she's waived her right to attorney."

Article I, section 11, of the Oregon Constitution guarantees a criminal defendant's right to counsel. *State v. Roberts*, 374 Or 821, 840, 584 P3d 1217 (2026). Under that provision, a defendant has the right to either self-representation or to be represented by counsel. *State v. Hightower*, 361 Or 412, 417, 393 P3d 224 (2017). An indigent defendant has a right to court-appointed counsel but does not have the right to court-appointed counsel "of the defendant's own choosing." *State v. Langley*, 351 Or 652, 664, 273 P3d 901 (2012) (*Langley III*). Accordingly, "a trial court is not required to appoint a substitute lawyer for a defendant in the absence of a legitimate complaint concerning the one already appointed for [them]." *State v. Stanton*, 369 Or 707, 715, 511 P3d 1 (2022) (internal quotation marks omitted).

A defendant may waive the right to counsel by intentionally relinquishing or abandoning a known right. *State v. Meyrick*, 313 Or 125, 131-32, 831 P2d 666 (1992). To accept a waiver of counsel, the trial court "must determine— and the record must reflect—that the waiver is both

---

[4] Defendant was referring to the presiding judge by his first name.

intentionally and knowingly made." *Stanton*, 369 Or at 715. "The 'knowing' component refers to a defendant's knowledge and understanding of the right to counsel and focuses primarily on whether the defendant is aware of the risks of self-representation." *Nees*, 319 Or App at 733. "The 'intentional' component, on the other hand, refers to whether a defendant has intentionally—either expressly or through continued misconduct following a sufficient court warning—chosen to proceed without counsel." *Id.*

*Langley III* set forth three r equirements that must be met to establish waiver by conduct:

"(1) engaging in repeated misconduct in the attorney-client relationship that defeats the ability of counsel to carry out the representation function; (2) an advance warning to the defendant that continuation of [their] abusive behavior would result in being forced to proceed *pro se* and; (3) a reasonable opportunity for the defendant to present [their] position on the facts in a manner that permits, if appropriate, the safeguarding of confidential communications and trial strategy from public disclosure."

*State v. Clardy*, 286 Or App 745, 760-61, 401 P3d 1188, *adh'd to as modified on recons*, 288 Or App 163, 406 P3d 219 (2017), *rev den*, 364 Or 680 (2019) (internal quotation marks, brackets, and ellipses omitted).

We begin with what is not at issue on appeal. First, defendant did not separately assign error to the trial court's denial of her motion to appoint substitute counsel and does not argue that the court was required to appoint her substitute counsel because she had a "legitimate complaint" about Thompson. *See State v. Funrue*, 339 Or App 427, 432, 568 P3d 1023 (2025) (explaining that a trial court has discretionary authority to appoint substitute counsel when the defendant has a "legitimate complaint concerning the one already appointed," which means a complaint "that rests 'on an abridgement of a criminal defendant's constitutional right to counsel'" and that "'simple loss of confidence or disagreement with counsel's approach to matters of strategy is not cause to substitute one appointed lawyer for another'" (quoting *State v. Langley*, 314 Or 247, 257-58, 839 P2d 692 (1992), *adh'd to on recons*, 318 Or 28, 861 P2d 1012 (1993) (*Langley*

*I*)). Second, defendant does not dispute that she had knowledge and understanding of the right to counsel and was aware of the risks of self-representation.

Defendant argues only that she did not intentionally waive the right to counsel because none of the three requirements for waiver by conduct were met here. The state disagrees, contending that defendant's waiver was both knowing and intentional because she engaged in repeated misconduct after receiving advanced warning and an opportunity to present her complaints about Thompson. We agree with the state.

Starting with the third prong, we conclude that the court gave defendant a reasonable opportunity to present her position on the facts supporting her complaint about Thompson. At the May 16 hearing, the presiding judge asked defendant if she was asking for Thompson to withdraw, and defendant responded with a prepared list of legal authorities that, in her view, "required" Thompson to withdraw and a blanket assertion that "there's *no attorneys* you guys have provided me that are willing to follow the law and the constitution." (Emphasis added.) The court clarified whether that blanket assertion should be understood to mean that defendant wished to represent herself, and defendant answered that she was asking for "effective counsel." Defendant thus had the opportunity to present facts supporting her complaint about Thompson, which consisted of a disagreement about defense counsel's legal duties under "the law and the constitution" or, stated differently, a disagreement about the legal standard of "effective counsel." Indeed, when the court responded that it was not inclined to appoint substitute counsel because defendant was "just going to try and fire that one" and that, if defendant was simply asking for adequate and effective counsel, she had been provided one with Thompson, defendant asserted that the problem was that "you guys aren't abiding by the law" and that "the rules that apply to you *** don't apply to me" because she is "a private natural person" with "natural unalienable rights." Thus, as we read the record, when given the opportunity to explain her position on Thompson's motion, defendant did not provide any specific facts regarding how Thompson's legal

representation was ineffective or inadequate in her case but instead relied solely on her position that the court and her appointed attorneys were not "abiding by the law."

Seeking a different result, defendant argues that she was denied the opportunity to support her complaints because the court's "direct and immediate response to defendant's generalized complaints about Thompson" was to "jump[] immediately to whether defendant was asking to proceed *pro se*," which "demonstrates that the trial court simply operated on its assumption that defendant's complaints were baseless." We disagree. In our view, the court reasonably interpreted defendant's "generalized" complaints about Thompson and her blanket assertion that "no attorneys" she had been given were "willing to follow the law and the constitution" as implying that *no* court-appointed attorney would be willing to follow the law and constitution to defendant's satisfaction. When the court sought clarification by asking if defendant wished to represent herself, defendant simply reiterated her position that Thompson (and Brinson) were not "adequate" and "effective" as she understood those terms, but she did not offer any examples of the "duties" that counsel had failed to fulfill in her case.

Further, this case is distinguishable from *Langley III*, on which defendant relies. In that case, the defendant's lawyers had "averred the existence of evidence of 'irreconcilable differences *** not of [the defendant's] making,'" in support of their motions to withdraw. *Langley III*, 351 Or at 667. The defendant stated that he supported the motions because he felt that the attorney-client relationship had broken down but declined to elaborate further in open court, and the court declined to consider the defendant's supporting evidence in an *ex parte* sealed affidavit. *Id.* at 666-67. Accordingly, the Supreme Court concluded that the trial court had erred because the court "based its assumption that [the] defendant's complaints about his lawyers were frivolous only on the evidence proffered by [the lawyers] in their sealed affidavits" and required that the defendant disclose information supporting his complaints in open court. *Id.* at 672. Here, by contrast, Thompson based his motion to withdraw on "a major breakdown in [the] attorney-client relationship" and

defendant's "demand[ ]" that he do so, and defendant elaborated on her complaints in open court and without reservation. We therefore conclude that defendant was afforded a reasonable opportunity to present her position on the facts supporting her complaints about Thompson.

We next address the first prong and, although it is a closer question, conclude that the record supports the trial court's determination that defendant engaged in repeated misconduct in the attorney-client relationship that defeated the ability of counsel to carry out the representation function. The trial court expressly identified defendant's repeated misconduct as both her "inability to get along with [her] attorneys and asking for them to withdraw" or "firing" them. Defendant contends that that ruling was impermissible because a defendant's failure to cooperate with counsel or complaints about counsel's representation do not constitute misconduct that defeats the ability of counsel to carry out the representation function. *See Langley III*, 351 Or at 669 (explaining that "a defendant's refusal to cooperate with legal counsel almost always makes the task of representation more difficult" but that "[a] criminal defendant does not violate a legal duty by declining to cooperate with counsel" and that "a defendant who chooses not to cooperate *** simply must live with the consequences of that conduct"); *see also id.* at 672 n 13 (noting that that case did not require the court "to decide whether a client's objections about appointed counsel can constitute misconduct" and that "[w]hether circumstances might exist in which a court could infer such a waiver is a question for another day").

We disagree with defendant's framing. Here, the court did not rely solely on defendant's "personality conflict" with her attorneys, but also on her repeated demands that they withdraw. As to Thompson, defendant asserted that he was "required" to withdraw because he "can't" provide her effective counsel, which implied that his continued appointment would be unlawful and unacceptable according to her understanding of the legal authorities she had cited, some of which were not relevant to that legal standard. And when defendant clarified that she was not waiving her right to counsel but asking for effective counsel and the court

responded, "[s]o then Mr. Thompson's your attorney," defendant insisted, "Mr. Thompson's not my attorney, no *** Mr. Thompson withdrew himself." Finally, after the court explained the risks of self-representation and explained why it was not inclined to appoint another attorney if defendant continued to insist on Thompson's withdrawal, defendant responded by demanding that the court must "find [her] an attorney." Under these circumstances, we conclude that defendant did not merely decline to cooperate with Thompson or complain about his representation; she unequivocally and repeatedly refused to accept Thompson as her lawyer. Thus, the record supports the trial court's determination that defendant engaged in misconduct that defeated Thompson's ability to carry out the representation function.[5]

          Turning to whether defendant engaged in similar misconduct with regard to Brinson, we conclude that the record supports the trial court's finding that she did. To be sure, we agree with defendant that it would be speculative to infer such misconduct from Brinson's motion to withdraw and supporting affidavit alone. However, defendant's own statements at the May 16 hearing support a reasonable inference that Brinson moved to withdraw for the same or similar reasons that Thompson did so—because defendant insisted that he was required to withdraw according to her understanding of the law. First, defendant's statement that "no attorneys you guys have provided me *** are willing to follow the law and the constitution" necessarily included her first attorney, Brinson. Second, when the court suggested that it had previously explained that if "these kind of conflicts happen over and over, they're unlikely to change just because we give you a new attorney," defendant responded that "the conflicts are only happening because you guys aren't abiding by the law," which again necessarily included the conflict with Brinson. There are multiple

---

     [5] We acknowledge that the *Langley III* court noted that "[i]n most conceivable circumstances, a criminal defendant's expression of objections about appointed counsel *** will not constitute misconduct because criminal defendants commonly submit them to the court without the benefit of legal training and without the assistance of a lawyer, and the fact that such submissions lack merit will not evidence a knowing and intentional waiver of counsel." 351 Or at 672 n 13. Again, here the trial court relied on both defendant's expression of objections about appointed counsel *and* her affirmative refusal to consent to their representation in its determination that she engaged in repeated misconduct.

possible reasons Brinson may have moved to withdraw, and choosing among them based solely on his representations to the court would be speculative. But together with defendant's own representations to the court, it is reasonable to infer that she engaged in similar misconduct with Brinson as the court found that she did with Thompson.

Finally, we address the second prong and conclude that the trial court provided sufficient advance warning to defendant that continuation of her abusive behavior would result in being forced to proceed *pro se*. Defendant acknowledges that the court warned her that if she did not continue with Thompson's representation and insisted that he withdraw she would be waiving her right to counsel. But in defendant's view, that warning did not satisfy the *Langley III* requirement because "the court was simply forcing defendant to choose between affirmatively waiving her objections to Thompson—in spite of defendant's unexamined claims of constitutionally ineffective assistance—or losing access to [court-appointed] counsel altogether," which "was not a permissible choice." *See Stanton*, 369 Or at 721 ("Essentially, the court put [the] defendant in the position of choosing between being represented by court-appointed counsel with an unresolved conflict claim and representing himself. That was impermissible."); *Langley III*, 351 Or at 673 ("[T]he proposed choice indicated that [the] defendant's only option to avoid self-representation was to accept representation by Smith and thus acquiesce in the court's assumption that [the] defendant's unexamined complaints against [one lawyer] were frivolous. That, too, was not a permissible choice.").

As we understand defendant's argument, the court's prior warning was not sufficient because the court did not examine or resolve defendant's complaints that Thompson was constitutionally ineffective or inadequate. We disagree. As we have explained, defendant had an opportunity to present her position on the facts of her complaints about Thompson, which amounted to a legal disagreement over counsel's duties under the law and constitution. Defendant did not articulate any specific duty that Thompson failed to fulfill in her case or how Thompson's representation was inadequate in anything other than abstract legal terms. The

court understood defendant's position and considered it when implicitly determining that Thompson was not required to withdraw. And the court's warning was in advance of defendant's repeated misconduct because at the May 16 hearing the court thrice warned defendant that her continued insistence that Thompson withdraw would force her to proceed without counsel *before* her final assertion that the court must "find [her] an attorney" and the court granted Thompson's motion.

We therefore conclude that the record supports the trial court's determination that defendant waived her right to counsel by misconduct, and we reject defendant's first assignment of error.

## CHARACTER EVIDENCE

In her second and third assignments of error, defendant argues that the trial court erred in excluding under OEC 404(2) testimony regarding defendant's character. Her second assignment challenges the exclusion of Stone's testimony that defendant's "character and *** demeanor has always been very polite and never rude" in Stone's presence. Her third assignment challenges the exclusion of Collin's father's testimony that defendant is not an "angry, hostile person." We review a trial court's ruling on the admissibility of character evidence offered under OEC 404(2) for legal error. *State v. Basua*, 280 Or App 339, 344, 380 P3d 1196 (2016).

OEC 404(2)(a) provides, "Evidence of a person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except: (a) Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"

OEC 405(1) governs the form of evidence offered under OEC 404(2)(a). *State v. Enakiev*, 175 Or App 589, 594, 29 P3d 1160 (2001). OEC 405(1) provides, "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On

cross-examination, inquiry is allowable into relevant specific instances of conduct." Thus,

> "character evidence proffered by the defense under OEC 404(2)(a) is admissible only if: (1) the evidence concerns a 'trait of character'; (2) that trait is 'pertinent' to the crime charged; (3) the evidence is offered in the proper form under OEC 405, and (4) the evidence was not of 'specific instances of conduct.'"

*Enakiev*, 175 Or App at 594.

At trial, defendant made an offer of proof outside the presence of the jury of Stone's and Collin's father's testimony regarding defendant's character. The trial court ruled that Stone's testimony that defendant's "character and \*\*\* demeanor has always been very polite and never rude" in Stone's presence was "not the proper way in which to elicit character evidence, so the way it was offered is not permissible." The court did not specifically rule on the admissibility of Collin's father's negative answer to defendant's question whether she was an "angry, hostile person." Instead, the court cautioned defendant that the admissibility of character evidence is limited under the rules of evidence and that, if defendant wished "to call those witnesses and present that limited amount of testimony and if you can present character testimony in a proper manner, then you can do that as well[.]" Defendant called both witnesses at trial, and they did not testify as to defendant's character for politeness or peacefulness.

Beginning with defendant's second assignment of error, we conclude that the trial court correctly ruled that Stone's proffered testimony that defendant's "character and \*\*\* demeanor has always been very polite and never rude" in Stone's presence was not offered in the proper form under OEC 405. Stone's statement was not in the form of defendant's reputation or of Stone's opinion of defendant's character, but was instead in the form of a factual assertion about limited instances of defendant's past behavior. In that way, it also referred to specific instances of defendant's conduct. *See State v. Reeder*, 137 Or App 421, 424-25, 904 P2d 644 (1995), *rev den*, 322 Or 598 (1996) (explaining that "inquiries focused on how [the] defendant had acted toward specific"

people "on specific occasions in the past" are improper under OEC 404(2)).

As to defendant's third assignment, having reviewed the record, we conclude that the trial court did not actually exclude Collin's father's testimony that defendant is not an "angry, hostile person." Rather, the court explained that if defendant wished "to call those witnesses and present that limited amount of testimony and if you can present character evidence in a proper manner, then you can do that[.]" We therefore reject defendant's second and third assignments of error.

## JURY INSTRUCTION

In her fourth assignment of error, defendant contends that the trial court plainly erred in giving the following jury instruction:

> "Every witness will take an oath to tell the truth and is assumed to speak truthfully. However, this assumption may be overcome by the manner in which the witness testifies, the nature or quality of the witness's testimony, contradictory evidence that you find to be more probably true, and evidence concerning the bias, motives, or interests of the witness."

In defendant's view, that instruction erroneously told the jury to apply a presumption "against the accused," which is prohibited by OEC 309(1); improperly commented on the evidence, which is prohibited by ORCP 59 E and ORS 136.330(1); constituted improper vouching for the credibility of witnesses, which usurps the jury's role as the "sole arbiter of witness credibility," *State v. Sperou*, 365 Or 121, 128, 442 P3d 581 (2019); and improperly shifted the burden of persuasion from the state to defendant.

An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). Whether an error is "plain" is a question of law. *State v. Gornick*, 340 Or 160, 167, 130 P3d 780 (2006).

We conclude that any purported instructional error is not obvious. As defendant acknowledges, the instruction parallels ORS 44.370, which provides:

> "A witness is presumed to speak the truth. This presumption, however, may be overcome by the manner in which the witness testifies, by the character of the testimony of the witness, or by evidence affecting the character or motives of the witness, or by contradictory evidence. Where the trial is by the jury, they are the exclusive judges of the credibility of the witness."

Defendant further acknowledges that the Oregon Supreme Court upheld a similar jury instruction in *State v. Kessler*, 254 Or 124, 127-28, 458 P2d 432 (1969), but argues that *Kessler* has been impliedly overruled by later cases. In light of ORS 44.370 and *Kessler*, we conclude that whether the instruction was in error in any of the ways defendant now contends is not obvious or beyond reasonable dispute. We therefore reject defendant's fourth assignment of error.

Affirmed.